**Michael J. WALLERI, Appellant,**

v.

**CITY OF FAIRBANKS, James Hayes, Robert Wolting, Billie Ray Allen, Jim Immel, Jerry Cleworth, and David Stephenson, Appellees.**

No. S–8186.

Supreme Court of Alaska.

Oct. 2, 1998.

---

The trial court may award costs in excess of the Administrative Rule 7(c) guidelines if a prevailing plaintiff demonstrates that the defendant has shown "bad faith or reprehensible conduct." *Id.* (citing *Fairbanks N. Star Borough v. Tundra*

Michael J. Walleri, pro se, Fairbanks.

Paul J. Ewers, Deputy City Attorney, Office of the City Attorney, Fairbanks, for Appellees.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

COMPTON, Justice.

### I.  INTRODUCTION

Michael Walleri appeals the dismissal of his action against the City of Fairbanks to void or reform a contract between it and a third party for the sale of certain municipal utilities.  We affirm in part and reverse in part.

## II. FACTS AND PROCEEDINGS

### A. Facts

In the summer of 1996, the City of Fairbanks concluded negotiations to sell its telephone, electric, sewer, and water utilities (collectively the Fairbanks Municipal Utilities System or FMUS) to a group of private business interests (Buyer Group). The contract for sale was signed that August. The contract contained a provision making it subject to approval by the voters of the City of Fairbanks. That same month, the Fairbanks City Council passed an ordinance approving the sale and referring the matter for inclusion on the October 8, 1996, city general election, as required by the city charter.[1] At that election, the voters approved the sale as presented on the ballot.

### B. Proceedings

Walleri, a taxpayer and utilities ratepayer, sued the City of Fairbanks and certain city officials (referred to collectively as the City), claiming that the terms of the actual contract were at odds with the terms on the ballot measure. The City answered and moved to dismiss on various grounds. Walleri later amended his complaint to allege the following counts: (1) violation of Fairbanks City Charter section 8.4 (contract unauthorized by vote); (2) breach of the duty to exercise reasonable care in negotiations; (3) constructive fraud; and (4) violation of Fairbanks City Charter section 2.8 (concerning open meetings). As a remedy, Walleri asked the court to (1) void the contract or (2) reform the contract to conform to the measure actually passed.

Following oral argument, the superior court ruled from the bench, dismissing all four counts of the complaint on two alternative grounds: (1) each count was an election

contest under Fairbanks City Code of Ordinances section 3.127,[2] which sets forth the sole method for contesting a city election, and Walleri failed to comply with the procedural requirements of that section; (2) each count involves non-justiciable political questions. Additionally, with respect to count IV, the court held that Fairbanks City Charter section 2.8, concerning open meetings, was preempted by the State Open Meetings Act. See AS 44.62.310–.312. The court noted that Walleri had failed to allege a violation of the State Open Meetings Act in his amended complaint.

The City then moved for attorney's fees. Walleri opposed, arguing that he was a public-interest litigant against whom attorney's fees could not be awarded. The court found that Walleri did not satisfy the requirements for public-interest-litigant status and awarded attorney's fees to the City in the amount of $14,168.50. Walleri appeals the dismissal of his case and the attorney's fees award.

## III. DISCUSSION

Walleri presents four distinct issues: (1) none of his causes of action were election contests; (2) all of his causes of action are justiciable; (3) the State Open Meetings Act did not preempt the Fairbanks City Charter provision concerning open meetings; and (4) an award of attorney's fees against him was inappropriate because he was a public-interest litigant.

### A. Are Any or All of Walleri's Causes of Action Properly Deemed "Election Contests"?

Walleri acknowledges that he did not comply with the procedural requirements for an election contest (set forth supra note 2). If any of his causes of action are properly

---

1. Fairbanks City Charter section 8.4 provides, in its entirety: "An entire public utility owned by the city shall not be sold or leased except by authority of an ordinance ratified by a majority of the qualified voters voting on the question."

2. Section 3.127 provides as follows:
   Contest of election.
   A defeated candidate or any ten (10) qualified voters who contested an election may bring an action in the superior court within ten

(10) days after the council has concluded that said election was validly held and the results entered upon the minutes. Such legal action shall be upon the grounds set forth in AS 15.20.540 for contesting state elections. The judge shall render a decision as required by AS 15.20.560 for state elections. If no such action is commenced within the ten (10) day period, the election and the election results shall be conclusive, final and valid in all respects.

deemed election contests, they were properly dismissed. This presents the question: What is an "election contest"?

### 1. *What is an election contest?*

█ Fairbanks City Code of Ordinances section 3.127 provides for the contest of city elections. In *Boucher v. Bomhoff,* 495 P.2d 77, 80 (Alaska 1972), we stated that the overriding concern in an election contest is "to ascertain whether the alleged impropriety in fact establishes doubt as to the validity of the election result." The reason for the rigid procedural requirements for election contests is that "public policy demands that election results have stability and finality." *Dale v. Greater Anchorage Area Borough,* 439 P.2d 790, 792 (Alaska 1968) (citing *Curry v. Dawson,* 238 Ark. 310, 379 S.W.2d 287, 289 (Ark. 1964)). Whether a cause of action should be deemed an election contest thus turns on the remedy sought. If granting the remedy would defeat the public interest in the stability and finality of election results, it is appropriate to deem the cause of action an election contest and to require compliance with the procedures for such contests. Conversely, if the remedy will not affect the stability and finality of the election result, then the cause of action should not be deemed an election contest.

### 2. *Do any of the counts of Walleri's complaint constitute an election contest?*

█ We conclude that none of the counts of Walleri's complaint constitutes an election contest. The only remedy sought by Walleri is the invalidation or reformation of the contract. Nowhere does Walleri challenge the validity of the election result. His complaint does not implicate the public policy favoring the stability and finality of such results.

In its opinion from the bench, the superior court suggests that any claim "regarding" an election is subject to the rules for an election contest. We agree with Walleri's argument that such a rule would be poor policy. As explained above, it is in line with the policy behind the stringent procedural requirements for election contests to classify as election contests only those causes of action in which a remedy sought would affect the stability and finality of the election. To classify as an election contest any claim "regarding" an election would not make the results of elections themselves any more stable.

The City argues that to void the contract is equivalent to voiding the election. We disagree. The election has significance independent of the contract. If it is proven that the contract does not match the terms voted on by the citizens of Fairbanks, no legal impediment appears to preclude the City from renegotiating a contract according to the terms actually voted upon.

The City next suggests that *Roberts v. Brownsboro Independent School District,* 575 S.W.2d 371 (Tex.App.1979), supports its argument and is "virtually identical" to the instant case. In *Roberts,* plaintiff sought, by declaratory judgment, to invalidate the city council order calling a school bond election after that election had occurred. *See id.* at 371–72. While the *Roberts* court focused on the idea that an attack on any part of the election process must be deemed an "election contest," we note that granting the remedy sought in *Roberts* would have had the direct effect of invalidating the election. *See id.* at 373–74. In the instant case, however, once it is recognized that the election has significance independent of the contract, it is clear that voiding the contract does not invalidate the election. *Roberts* is, thus, distinguishable. The City presents a number of other out-of-state cases. However, each of these cases is also distinguishable in that the remedy requested required the invalidation of the election result.[3]

---

**3.** In *Taylor v. Roche,* 271 S.C. 505, 248 S.E.2d 580, 581 (S.C.1978), plaintiffs sought to invalidate a constitutional amendment because the form of the question on the ballot used to obtain approval for that amendment was misleading. This is conceptually different from the instant case. The crucial "election result" in *Taylor* was the passage of the constitutional amendment.

The crucial "election result" in the instant case is the authorization of the sale of the utilities, under particular terms. *See* Fairbanks City Charter section 8.4. The contract itself, which Walleri seeks to invalidate, is not the election result.

In *Dehoff v. Attorney General, State of Tennessee,* 564 S.W.2d 361, 362 (Tenn.1978), the plaintiff sought a declaratory judgment that a refer-

Finally, the City argues that because the contract came first, only the election may be challenged. It is uncontested that the contract was negotiated and signed prior to the election. That being the case, the City argues that if the ballot language did not conform to the contract, it must be the ballot language that is defective. The City suggests that a challenge to the ballot language is clearly an election contest.

This argument depends on a principle already rejected above—that the election has no significance independent of the contract. Once it is accepted that the contract and the election result (authorizing entry into a contract with particular terms) are distinct, it is irrelevant which came first.

B. *Are Any or All of Walleri's Causes of Action Non–Justiciable Political Questions?*

The superior court held, in the alternative, that each of Walleri's counts involved a non-justiciable political question. The superior court reasoned thus:

> The issue of selling the city utilities is a policy value judgment issue to be decided by the City Council and the voters.... The basic issue [in each count of Walleri's complaint is] whether the ordinance or the sale is right or wrong or good or bad ... and these political questions are best left to legislative bodies, not the courts.... This court finds that the grounds for a political question are met. There is a textually demonstrable commitment of the is-

sue to another political department. Here it is to the City Council ... and the court finds that the decision of what to do with city property is a decision for the city and its voters.

■ "To aid in the identification of nonjusticiable political questions we have employed the approach adopted by the United States Supreme Court in *Baker v. Carr* [369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) ]." *State, Dep't of Natural Resources v. Tongass Conserv'n Soc'y,* 931 P.2d 1016, 1018 (Alaska 1997) (citing *Abood v. League of Women Voters of Alaska,* 743 P.2d 333, 336 (Alaska 1987); *Malone v. Meekins,* 650 P.2d 351, 357 (Alaska 1982)). Under our interpretation of *Baker,* one of the criteria for finding a political question is, as the superior court suggests, "a textually demonstrable commitment of the issue to a coordinate political department." 650 P.2d at 357 (citing *Baker,* 369 U.S. at 217, 82 S.Ct. 691). And, as the superior court suggests, Fairbanks City Charter section 8.4 demonstrably commits the issue of the "rightness or wrongness" of selling the City's utilities to the city council and to the voters. However, the superior court misapplied the criteria for finding a political question to the facts of the instant case.

■ Count I does not ask the court to determine the "rightness or wrongness" of the decision to sell FMUS. Rather it suggests that the contract is invalid for failure to comply with Fairbanks City Charter section

endum election was void because the ballot question had not adequately explained the effects of the act to be approved. The court broadly interpreted the term "election contest" to include any action that "seeks a judicial determination that an election is invalid, whatever the cause of invalidity." *Id.* at 363–64. The City argues that, as the Tennessee court looked past the declaratory-judgment form of Dehoff's action to its ultimate effect of invalidating the election, we should look past the contract-voiding form of Walleri's action to its alleged ultimate effect of invalidating the election. But, as we explained above, Walleri's action will not in fact have that ultimate effect.

*State ex rel. Byrd v. Board of Elections of Summit County,* 65 Ohio St.2d 40, 417 N.E.2d 1375 (Ohio 1981), is similar to *Dehoff.* Plaintiff sought to invalidate an election by means of a writ of mandamus and by an action in *quo war-*

*ranto. See id.* at 1377. The court concluded that these actions were unavailable—the plaintiff was required to follow the statutory procedures for an election contest. *See id.* at 1377–79. The key difference, again, is that the plaintiff in *Byrd* sought to invalidate the results of an election, while Walleri does not.

In *Dinwiddie v. Board of County Commissioners of Lea County,* 103 N.M. 442, 708 P.2d 1043, 1045 (N.M.1985), plaintiffs challenged both the validity of the election and its result. *Dinwiddie* stands for the unremarkable proposition that, because a challenge to either the validity of the election or a challenge to the result "seek[s] to alter the certified result of the election," such a challenge is an election contest. *Id.* at 1045–46. This is unhelpful to the City—Walleri's complaint does not seek to alter the certified result of the election.

8.4, which requires voter ratification of an ordinance authorizing the sale of a public utility. Count IV also does not challenge the correctness of the decision to sell FMUS. It too alleges a procedural violation—failure to comply with Fairbanks City Charter section 2.8, which sets forth local open meetings requirements. Counts II and III allege individual acts of breach of duty of care and constructive fraud by City officials. These counts do not appear to ask the court to determine whether the contract was a good idea.[4] We do not find that any of the counts of Walleri's complaint involves a political question.

### C. Did Walleri State a Cause of Action under the Fairbanks City Charter's Open Meetings Provision?

Section 2.8 of the Fairbanks City Charter provides that all city council meetings must be open to the public, except that the council may discuss in a closed or executive session "any question which would tend to defame or prejudice the reputation and character of any person." In count IV of his complaint, Walleri alleges that the city council met in closed executive sessions at least seven times to discuss the sale of FMUS, in violation of the charter provision referenced above. The superior court held that Walleri could not state a cause of action under section 2.8 because that provision is preempted by AS 29.10.200, 29.20.020, and 44.62.310.

The superior court is correct. Alaska Statute 29.10.200 lists provisions that "apply to home rule municipalities as prohibitions on acting *otherwise than as provided.* These provisions supersede existing and prohibit future home rule enactments that provide

*otherwise."* (Emphases added.) No one contends that Fairbanks is not a home rule municipality. Alaska Statute 29.20.020 is one of the provisions mentioned in AS 29.10.200. Alaska Statute 29.20.020 provides in part that the "[m]eetings of all municipal bodies shall be public as provided in AS 44.62.310." Alaska Statute 44.62.310(a) provides in part that "[a]ll meetings of a governmental body of a public entity of the state are open to the public except as otherwise provided by this section or another provision of law." Alaska Statute 44.62.310(c) lists the subjects that may be considered in executive session. This list is broader than the exception provided in section 2.8 of the Fairbanks City Charter— the Fairbanks City Charter provides "otherwise." It is thus preempted, by the terms of AS 29.10.200.[5] Walleri's argument entirely ignores the effect of the explicit language of AS 29.10.200, and so is not well taken.[6]

### D. Was the Attorney's Fees Award against Walleri Appropriate?

Because we reverse the dismissal of counts I, II, and III the City is not, at this time, the prevailing party. We therefore vacate the award of attorney's fees.

### IV. CONCLUSION

We AFFIRM the dismissal of count IV; REVERSE the dismissal of counts I, II, and III; VACATE the award of attorney's fees; and REMAND the case for further proceedings consistent with this opinion.

---

4. The City suggests a general rule that "[t]he nonjusticiability of a political question cannot be overcome by questioning the 'legality' of the means employed to implement the policy." The cases that the City cites do not, however, stand for this broad proposition. These cases simply hold that questions regarding "legislative rules" are nonjusticiable, absent exceptional circumstances, as the constitution specifically commits to the legislature the authority to provide for its own rules of procedure. *See Abood v. League of Women Voters of Alaska,* 743 P.2d 333, 339–40 (Alaska 1987); *Abood v. Gorsuch,* 703 P.2d 1158, 1163–64 (Alaska 1985); and *Malone v. Meekins,* 650 P.2d 351, 356 (Alaska 1982).

5. Walleri concedes that the Council could hold the meetings at issue in executive session under AS 44.62.310.

6. We recognized the preemptive effect of the statutory predecessor to AS 29.10.200 in *Jefferson v. State,* 527 P.2d 37, 43 n. 33 (Alaska 1974): "If the legislature wishes to 'preempt' an entire field, they must so state. We note that the legislature has done this in its new Title 29, Municipal Code." [Referring to the predecessor to AS 29.10.200.] (Citation omitted.)