David P. BRAUN, Appellant,

v.

Denali BOROUGH, Appellee.

David P. Braun, Appellant,

v.

Denali Borough, Appellee.

Nos. S–12050, S–12359.

Supreme Court of Alaska.

Sept. 12, 2008.

Rehearing Denied Oct. 24, 2008.

720

David P. Braun, pro se, Healy, Appellant.

James M. Gorski, Hughes Bauman Pfiffner Gorski & Seedorf, LLC, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

David Braun filed four lawsuits against the Denali Borough, challenging the 2002 and 2004 reapportionment plans adopted by Denali Borough voters. Two of these suits have resulted in appeals that we have consolidated for decision.

Braun's appeals challenge three issues in the decisions of two superior courts: (1) Judge Charles R. Pengilly's grant of summary judgment to the Denali Borough on the ground that Braun's November 2004 lawsuit was an unsuccessful election challenge to the 2004 vote on the Denali Borough reapportionment plan; (2) Judge Randy M. Olsen's decision that the 2004 Denali Borough reapportionment plan was constitutional; and (3) Judge Olsen's denial of attorney's fees to

Braun for his challenge to the 2002 reapportionment plan.

We conclude that Braun is entitled to attorney's fees for his challenge to the 2002 reapportionment plan under the catalyst theory. But because the lawsuit before Judge Pengilly was indeed an unsuccessful election challenge, and because the 2004 Denali Borough reapportionment plan does not violate the equal protection clauses of the Alaska Constitution or the United States Constitution, we affirm those decisions.

## II. FACTS AND PROCEEDINGS

██ The Denali Borough Charter, adopted in 1989, provides for a nine-seat elected assembly and calls for reapportionment "[a]s the need arises." Assembly apportionment is governed by AS 29.20.060–.120. On August 12, 2001, after the release of the 2000 census results, the Denali Borough Assembly declared itself "malapportioned." The Assembly then developed a "by-district" reapportionment proposal and presented it, along with an alternative "at-large" proposal submitted by a group of Borough voters, to the public in a special election. On February 19, 2002, the voters approved the Borough's proposed "by-district" reapportionment plan and rejected the "at-large" proposal. The total variance of the 2002 approved reapportionment plan was 11.9%.[1]

Braun and at least fifty other Denali Borough voters submitted a petition to the Department of Community and Economic Development requesting review of the reapportionment plan to determine if it met the equal representation standards of AS 29.20.060. The petition was received in the Department office on March 26, 2002, and after a "thorough[ ] review" of the plan and the process used to adopt it, the Commissioner determined that the plan was constitutional and issued a written decision to that effect on May 9, 2002.

Approximately one month later, Braun filed a complaint with the State of Alaska Ombudsman. He charged that the 2002 reapportionment plan's variance improperly exceeded 10%, that the plan purposefully disenfranchised Healy area voters, and that the Commissioner erred in determining that the plan was constitutional. Beth Liebowitz, counsel for the office of the Ombudsman, agreed with the Commissioner that the plan was constitutional and explained her reasoning to Braun in a detailed letter dated August 6, 2002. But two days later, Liebowitz wrote a letter to the Department director stating that "several aspects of [the Department's] review disturbed [her]" and attempted to "explain what [she] found so that [the Department] may consider these issues in future decisions." Despite characterizing the matter as a "close case in many ways," Liebowitz could not say that the Commissioner's decision was "clearly wrong" and concluded that Braun's complaints, though serious, "d[id] not necessarily establish a constitutional violation."

After Liebowitz issued her letter approving the plan, Braun appealed the Commissioner's decision to the superior court in his first complaint.[2] Then, in November 2003, the Borough held a regularly scheduled election using the district boundaries adopted in the 2002 reapportionment plan. Braun filed a separate lawsuit challenging this election.[3]

Then, in May 2004, the parties reached a settlement. Under its terms, Braun and the Borough "agreed to submit presumptively constitutional apportionment plans (with a population variance of less than 10%) to the

---

1. Under the one-person, one-vote doctrine, population among the districts should be equal "so that the vote of any citizen is approximately equal to that of any other citizen" in the Borough. *Hickel v. SE. Conference*, 846 P.2d 38, 47 (Alaska 1992). A total variance indicates the percentage by which a given apportionment deviates from this mathematical ideal, calculated by adding the percentage deviation of the least populated district and the percentage deviation of the most populated district. *Kenai Peninsula Borough v. State*, 743 P.2d 1352, 1356 n. 1 (Alaska 1987); *Kentopp v. Anchorage*, 652 P.2d 453, 464 (Alaska 1982); *Groh v. Egan*, 526 P.2d 863, 874 (Alaska 1974).

2. *Braun v. Denali Borough (Braun I)*, Case No. 4FA–02–02156 CI (2002). Judge Olsen presided over this case.

3. *Braun v. Denali Borough (Braun II)*, Case No. 4FA–03–02607 CI (2003). Superior Court Judge Mark I. Wood presided over this case.

**724**

voters, who would ... choose an apportionment plan in the general election to be held the following November." *Braun I* would be stayed "pending voter decision of assembly apportionment in accordance with these terms" and then dismissed "[u]pon approval ... of a constitutionally acceptable apportionment plan." Judge Wood also dismissed *Braun II* based on this settlement.

Braun and the Borough set about developing their reapportionment plans. Michael Walleri, counsel for Braun, attended an Assembly meeting and "urged the Assembly to build their plan around census blocks." He also highlighted the importance of community representation and "strongly urged the Borough to stick to those community bases" in its new reapportionment plan. The Borough complied and drafted a proposal reapportioning its four election districts to coincide with the 2000 U.S. Census block boundaries. The 2004 Borough proposal achieved a variance of 9%. The citizen-generated plan, which was developed by Braun, featured five districts, also following census boundaries, and at-large voting. Its variance was 8.7%.

About one month before the election on the new reapportionment plan, Braun filed a third suit against the Borough, alleging that the proposal it intended to submit to voters was unconstitutional and therefore violated the settlement agreement.[4] On November 2, 2004, the voters considered both reapportionment plans; they ultimately rejected Braun's proposal and adopted the Borough's plan. On November 10, 2004, Braun filed a fourth suit against the Borough, challenging the constitutionality of the election and the plan.[5] Shortly thereafter, Braun and other voters petitioned the Department of Commerce, Community and Economic Development[6] to review the newly adopted reapportionment plan for compliance with AS 29.20.060.

In early December 2004 the Borough filed a "Notice of Compliance with Settlement Agreement" in *Braun I* based on the 2004 vote. The Borough urged the court to decide the issue of attorney's fees and costs so that the case could be closed. Three days later, Braun emailed the Commissioner of the Department of Commerce, Community and Economic Development and outlined his theory on why the Borough's reapportionment plan was unconstitutional. Nonetheless, in a letter dated January 10, 2005, the Commissioner upheld the adopted plan.

On February 18, 2005, the parties met with Judge Olsen for a status conference. They agreed that the constitutionality issues related to the 2004 reapportionment election should be adjudicated by either Judge Savell or Judge Pengilly in *Braun III* or *Braun IV*. Judge Olsen consequently considered *Braun I* resolved as to all issues but attorney's fees. Coincidentally, Judge Savell (of *Braun III* ) ruled on the very same day that Judge Olsen's case (*Braun I* ) was the appropriate forum to consider the constitutionality of the 2004 plan.

In light of the dismissal of all issues but attorney's fees in *Braun I*, Braun moved for attorney's fees in that case on March 21, 2005. Braun argued that he was entitled to attorney's fees under the catalyst theory and that he was a public interest litigant. The Borough opposed the motion, contending that Braun was not the prevailing party, that he was not a public interest litigant, and that the fees and costs he sought were inappropriate.

Meanwhile, Braun moved for a partial judgment and ruling in *Braun IV* that the plan and the process by which it was adopted were unconstitutional. The Borough opposed the motion, arguing (1) that the settlement agreement precluded Braun from filing new reapportionment cases and (2) that *Braun IV* was an election contest demanding a high burden of proof that Braun's complaint could not meet. In March 2005 Braun

---

**4.** *Braun v. Denali Borough (Braun III)*, Case No. 4FA 04–02428 CI (2004). Superior Court Judge Richard D. Savell presided over this case.

**5.** *Braun v. Denali Borough (Braun IV)*, Case No. 4FA 04–02616 CI (2004). Judge Pengilly presided over this case.

**6.** At this point, the title of the department had changed from the Department of Community and Economic Development to the Department of Commerce, Community and Economic Development.

filed a supplemental motion informing Judge Pengilly that Judge Olsen would not be considering the constitutionality of the 2004 reapportionment per stipulation of the parties in *Braun I*, and that Judge Olsen and the parties anticipated Judge Pengilly would decide that issue in *Braun IV*.

Judge Pengilly heard oral argument on March 31, 2005. Two weeks later, he determined that *Braun IV* was an election contest in which Braun had failed to meet the high burden of proof required; he therefore granted the Borough's motion for summary judgment. He also decided that his court was the wrong forum to consider the constitutionality of the 2004 reapportionment and suggested three possible avenues to Braun for consideration of that issue: (1) Braun could "seek to enforce the settlement agreement in [*Braun I*] before Judge Olsen"; (2) he could seek to have the agreement set aside on the ground that it was unenforceable; or (3) he could file an appeal of the Commissioner's decision that the apportionment plan adopted in 2004 was constitutional.

Approximately six weeks after Judge Pengilly's decision, the parties returned to Judge Olsen for a status conference. They informed him that Judge Pengilly had declined to rule on the constitutionality of the 2004 plan and they requested that Judge Olsen do so himself. As Judge Olsen recognized, the parties agreed that if the 2004 apportionment plan was found to be constitutional, "that will be the end of all questions in this case." Judge Olsen agreed to review the constitutionality of the 2004 plan and, with the input of the parties, developed a schedule for submission of evidence and briefing.

Braun's counsel, Walleri, withdrew from *Braun I*, *Braun III*, and *Braun IV* in early January 2006. Braun then filed two motions requesting direction from Judge Olsen on how to proceed. Judge Olsen responded in an order of clarification dated February 16, 2006 that the case was now solely about the constitutionality of the 2004 reapportionment plan and applicable attorney's fees. Judge

Olsen stated that he would not entertain arguments on any other subject.

In a brief filed about six weeks later, Braun contended that Judge Olsen had no jurisdiction to consider the constitutionality of the 2004 plan but nonetheless argued alternatively that the 2004 plan was unconstitutional because it purposefully diluted the vote of Healy area residents. The Borough filed a brief supporting the constitutionality of the plan on March 31, 2006, and Braun filed a reply brief reiterating his position that the court had no jurisdiction to consider the constitutionality of the 2004 plan.

Judge Olsen heard oral argument on May 5, 2006. He issued a written decision on May 15 in which he agreed with Braun that he did not have jurisdiction to consider the 2004 plan. He concluded that *Braun I* remained dismissed and that the Borough was the "nominal prevailing party." He declined to award the Borough attorney's fees because he decided that Braun was a public interest litigant. Alternatively, Judge Olsen ruled that if he did have jurisdiction to consider the constitutionality of the 2004 plan, the plan was constitutional and *Braun I* remained dismissed.

Braun moved for reconsideration, arguing that he was the prevailing party because his challenge to the 2002 reapportionment plan was successful and that he was entitled to attorney's fees. Judge Olsen denied this motion. Braun filed a second request for reconsideration, which was also denied. Judge Olsen entered judgment in favor of the Borough on July 12, 2006.

Of the four suits Braun filed in this line of cases, two have resulted in appeals: *Braun I* and *Braun IV*, in S–12359 and S–12050.[7] In December 2006 we consolidated these cases.

## III. STANDARD OF REVIEW

 We review summary judgment decisions de novo, affirming the trial court's grant of summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter

---

7. *Braun II* was dismissed after the negotiation of the settlement agreement. The record indicates that as of May 2006, all *Braun III* claims but one,

an Open Meetings Act claim, had been dismissed. We are unaware of any appeal in that case.

of law."[8] In reviewing a superior court's grant of summary judgment, we draw "all factual inferences ... in favor of the party against whom summary judgment was entered."[9]

We review a superior court's determination of prevailing party status and attorney's fees for abuse of discretion.[10] We will overturn such determinations only if they are manifestly unreasonable.[11] With respect to the constitutionality of reapportionment plans, our review is limited in scope.[12] We have explained that "[t]hough we remain mindful of our obligation to assure compliance with all constitutional guarantees, we will not lightly interfere with the reapportionment process."[13] We accord deference to the legislature in this inquiry,[14] and a reapportionment plan "will be upheld if reasonable and not arbitrary."[15]

Review of an administrative decision calls for deference to the administrative agency when the issue is a question of law requiring agency expertise[16] or a question of fact.[17]

**8.** *Brannon v. Cont'l Cas. Co.,* 137 P.3d 280, 284 (Alaska 2006).

**9.** *Id.*

**10.** *Bromley v. Mitchell,* 902 P.2d 797, 804 (Alaska 1995).

**11.** *Id.*

**12.** *Kentopp v. Anchorage,* 652 P.2d 453, 462 (Alaska 1982).

**13.** *Id.*

**14.** *See id.* ("Deference similar to that owed the Governor in fashioning a state reapportionment plan is due the Anchorage Assembly in its decisions regarding the adoption of a municipal reapportionment plan.").

**15.** *Kenai Peninsula Borough v. State,* 743 P.2d 1352, 1363 (Alaska 1987).

**16.** *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.,* 171 P.3d 1110, 1115 (Alaska 2007) ("In questions of law involving an agency's expertise ... a rational basis standard is applied and we defer to an agency's determination so long as it is reasonable.").

## IV. DISCUSSION

### A. Braun Is Entitled to Attorney's Fees and Costs for His Challenge of the 2002 Reapportionment Plan Under the Catalyst Theory.

In *Braun I,* Braun challenged the constitutionality of the 2002 reapportionment plan. The case was conditionally resolved through a settlement agreement negotiated by the parties in May 2004.[18] The settlement agreement provided that Denali Borough voters would be presented with two "presumptively constitutional" apportionment plans[19]—one submitted by the Borough, the other submitted by a citizen—in the next election. Braun submitted the citizen-generated reapportionment plan, which was presented to Denali Borough voters alongside the Borough's plan in the following election. The voters opted for the Borough's plan rather than Braun's.

Braun moved for attorney's fees in *Braun I* on March 21, 2005. The Borough opposed. Judge Olsen denied the motion as premature

**17.** *Halter v. State, Dep't of Commerce & Econ. Dev., Med. Bd.,* 990 P.2d 1035, 1037 (Alaska 1999) (stating that "review of the Board's factual findings is limited to whether there was substantial evidence in the record to support the Board's findings"); *see also Ketchikan Gateway Borough v. Ketchikan Indian Corp.,* 75 P.3d 1042, 1045 (Alaska 2003) (noting that the substantial evidence test is deferential).

**18.** The settlement agreement stayed the case "pending voter decision of assembly apportionment in accordance with the[] terms" outlined in the agreement, and it conditioned dismissal of the case "[u]pon approval by the voters of a constitutionally acceptable apportionment plan."

**19.** Reapportionment plans with variances under 10% are "prima facie constitutional." *Kenai,* 743 P.2d at 1366–67; *see also Groh v. Egan,* 526 P.2d 863, 877 (Alaska 1974). Though the 1998 amendments to article VI of the Alaska Constitution may affect the applicability of this rule to legislative apportionments, as discussed in *In re 2001 Redistricting Cases,* 44 P.3d 141, 145–46 (Alaska 2002), they do not affect the applicability of the rule to municipal apportionments. The plain language of article VI, section 6 makes clear that the section applies only to house and senate district boundaries drawn by the Redistricting Board. Municipal apportionment plans are governed instead by statute. *See* AS 29.20.060–.120.

but later ruled on the issue in May 2006, declining to award Braun attorney's fees "because [Braun's] challenge to the 2002 apportionment scheme ha[d] not been successful" and because "[t]he small modification in the 2004 scheme [20] would not change this conclusion."

Braun argues that his lawsuit led the Borough to withdraw the 2002 plan, which had a variance over the 10% prima facie constitutional limit, and to develop the 2004 plan that was prima facie constitutional. He contends that this fact alone makes him the prevailing party. He incorporates the arguments made in his March 2005 motion for attorney's fees, which were grounded in the catalyst theory.

We have held that the prevailing party is the one who succeeds on the main issue.[21] A party need not prevail on every issue to enjoy prevailing party status,[22] nor need he achieve "formal judicial relief."[23] Under the catalyst theory, a plaintiff who settles enjoys prevailing party status if he proves: (1) that the goal of his litigation was achieved, meaning that he succeeded on a significant issue and achieved a benefit for which the suit was brought, and (2) that his lawsuit was a catalyst in motivating the defendant to settle.[24] Once the plaintiff makes this prima facie case, he is entitled to Rule 82(b)(2) attorney's fees unless the defendant proves that his lawsuit "lacked colorable merit."[25]

Here, both prongs of the test have been fulfilled. The first question is whether motivating the Borough to set aside the 2002 plan and to develop a new one constitutes "success" for Braun on the main issue of his case—challenging the constitutionality of the 2002 reapportionment plan. Braun argues that the settlement agreement, particularly

the replacement of an over–10% variance plan with a prima facie constitutional, sub–10% variance plan, proves that his suit was a success. Conversely, the Borough maintains that its participation in the settlement agreement does not constitute an admission that the 2002 plan was unconstitutional, but rather evidences a practical desire to avoid litigation. But the Borough itself has stated that the settlement agreement "gave [Braun] nearly everything he asked for in his complaint." Braun challenged the constitutionality of the 2002 reapportionment plan, and as a result of his suit, the Borough withdrew that plan and replaced it with a prima facie constitutional one. As to the second prong, the Borough developed the 2004 reapportionment plan and presented it to the voters in furtherance of its settlement agreement with Braun. Braun is entitled to appropriate attorney's fees and costs under the catalyst theory.[26]

### B. The Superior Court Did Not Err in Deciding that the 2004 Denali Borough Reapportionment Plan Was Constitutional.

Braun argues that the reapportionment plan adopted by Denali Borough voters in 2004 violates the equal protection guarantees of both the United States and Alaska Constitutions. The 2004 Denali Borough reapportionment plan provides for four voting districts with borders defined by the U.S. census blocks. Under the plan, (1) 609 of the total 1,893 Denali Borough voters are in the North District, meriting three of the nine assembly seats; (2) 212 are in the East Central District, meriting one assembly seat; (3) 850 are counted in the West Central District, meriting four assembly seats; and (4) 222 are counted in the South District, meriting one assembly seat.[27] Braun contends that

**20.** In its 2004 reapportionment plan, the Borough achieved a variance of 9%, versus the 11.9% variance of the previous plan.

**21.** *Halloran v. State, Div. of Elections,* 115 P.3d 547, 553 (Alaska 2005).

**22.** *Id.*

**23.** *DeSalvo v. Bryant,* 42 P.3d 525, 530 (Alaska 2002).

**24.** *Id.*

**25.** *Id.*

**26.** We note that the Borough has conceded that Braun is a public interest litigant as to the merits of his constitutionality challenge, and in his May 2006 decision, Judge Olsen determined that Braun was a public interest litigant.

**27.** The trial court noted that "[t]he Denali Borough, at 12,000 square miles, is larger than nine of the states of the United States." With only 1,893 residents, its average population density is

these district lines have been drawn to split Healy area voters, who number 1,000 of the 1,893 total Borough voters, by improperly combining some of them with other districts. According to Braun, this arrangement provides fewer assembly seats for Healy area voters than the majority they deserve, diluting their vote and improperly denying them majority control. Braun also complains that the plan provides Cantwell (in the South District) and Anderson (in the North District) enough seats together to "block an attempted override of the mayor's veto by representatives of over two thirds of borough residents," which he believes is improper since Anderson and Cantwell number only 589 residents.

The Borough maintains that the plan is presumptively constitutional and moreover that it is constitutional in fact. In his May 2006 opinion, Judge Olsen based his dismissal of Braun's constitutional claims on two alternative grounds: (1) that he did not have jurisdiction to consider the constitutionality of the 2004 plan or (2) if he did have jurisdiction, that the 2004 plan was constitutional, thereby fulfilling the settlement agreement.

### 1. Judge Olsen did not lack jurisdiction to consider the constitutionality of the 2004 reapportionment plan.

■■■ As he contended below, Braun argues on appeal that Judge Olsen did not have jurisdiction to consider the 2004 reapportionment plan. We disagree. At the May 2005 status conference before Judge Olsen, the parties stipulated that Judge Olsen's case was the correct forum to decide this discrete issue, and Judge Olsen, Braun, and the Borough developed a schedule for submission of evidence and briefing accordingly. The case moved forward in that court, and the February 2006 order of clarification reiterated that the only issue to be decided was the constitutionality of the 2004 reapportionment plan. It was not until late March 2006, ten months

after the parties stipulated that the case belonged before Judge Olsen, that Braun changed course and argued that Judge Olsen did not have jurisdiction.

Braun's eleventh-hour argument that Judge Olsen lacked jurisdiction to decide the issue is belied by two factors: (1) the constitutionality of the 2004 plan directly affected the settlement agreement in the case originally assigned to Judge Olsen (*Braun I*) and (2) the parties stipulated that the case before Judge Olsen was an appropriate forum to decide the issue, and they litigated it there to completion. After extensive briefing from both parties on the constitutionality of the 2004 plan, Judge Olsen issued a decision resolving the question. Judge Olsen had jurisdiction to decide the constitutionality of the plan.

### 2. The superior court did not err in affirming the constitutionality of the 2004 Denali Borough reapportionment plan.

Braun and other voters petitioned the Department of Commerce, Community and Economic Development to review the constitutionality of the 2004 reapportionment plan. The Commissioner issued a written decision concluding that the plan was constitutional. In his May 2006 opinion, Judge Olsen upheld the Commissioner's decision, stating that "the deference granted to the voters who adopted the [2004 reapportionment] scheme in the first place, and to the Commissioner who reviewed the scheme in the second place, would prevent the court from reversing the decision of the Commissioner." Under our precedent, that deference was appropriate. In *Kentopp v. Anchorage*, we likened the deference due a municipal assembly in adopting a municipal reapportionment plan to the deference the Governor enjoys in fashioning a state reapportionment plan.[28] We explained that "the formulation of a reapportionment plan is a decidedly political process"

---

0.1 person per square mile, and the majority of census blocks contain no or virtually no residents. Braun agrees that the Borough "does have a large area and a small population," and the Borough comments that "equaliz[ing] election districts in lightly populated rural boroughs" is particularly challenging. Indeed, we have not-

ed before that "[r]edistricting in Alaska is a task of Herculean proportions." *In re 2001 Redistricting Cases*, 44 P.3d 141, 147 (Alaska 2002).

**28.** 652 P.2d 453, 462 (Alaska 1982).

in which we would "not lightly interfere," though we recognized our obligation "to assure compliance with all constitutional guarantees."[29] We characterized our review of reapportionment plans as "limited" and stated we would validate them as long as they were reasonable and not arbitrary.[30] With that in mind, we examine Braun's equal protection claims in turn.

### a. The 2004 Denali Borough reapportionment plan does not violate the federal Equal Protection Clause.

 Two fundamental principles govern our analysis of Braun's federal Equal Protection Clause claim. In our federal equal protection analysis in *Kenai Peninsula Borough*, we recognized that

> in the context of voting rights in redistricting and reapportionment litigation, there are two basic principles of equal protection, namely that of "one person, one vote"—the right to an equally weighted vote—and of "fair and effective representation"—the right to group effectiveness or an equally powerful vote.[31]

We have held that an apportionment plan with a variance under 10% falls in a category of minor deviations and meets the quantitative standard of one person, one vote.[32] It is undisputed that the variance of the 2004 reapportionment plan is under 10%. The 2004 reapportionment plan therefore meets the first element of the *Kenai* test.

 The second element of the test requires that the plan provide fair and effective representation to voters. Examining this issue in *Kenai*, we cited the United States Supreme Court's plurality decision in *Davis v. Bandemer*, which held that an equal protection violation

> may be found only where the electoral system substantially disadvantages certain

voters in their opportunity to influence the political process effectively. In this context, such a finding of unconstitutionality must be supported by evidence of continued frustration of the will of a majority of the voters or effective denial to a minority of voters of a fair chance to influence the political process.[33]

As we discussed in *Kenai*, a successful constitutional claim in the political context requires proof not only of purposeful discrimination but also proof that a group of voters is being "consistently and substantially excluded from the political process [and] denied political effectiveness over a period of more than one election."[34] In *Kenai*, we held a reapportionment plan did not violate the federal Equal Protection Clause because it had not been proven that the Board attempted to consistently and substantially deny voters representation, and because the Reapportionment Board's goal was to create proportionality.[35]

 Here, Braun has not met his burden of proving that Denali Borough voters are being "consistently and substantially excluded from the political process." Braun argues that

> the Denali Borough has over *many* elections impermissibly discriminated against borough residents by 1) providing for weighted voting, 2) not providing for majority rule, 3) not providing as nearly as practicable for relatively integrated socioeconomic areas and, 4) unnecessarily depriving rural residents of representation.

But these arguments against the 2004 plan are unavailing. The variance of the 2004 plan is under 10%, which we have held is prima facie constitutional and insufficient to prove weighted voting.[36] Braun claims that the Healy area population, which constitutes a majority of Denali Borough residents, is

---

29. *Id.*

30. *Id.; see also Kenai Peninsula Borough v. State,* 743 P.2d 1352, 1363 (Alaska 1987).

31. 743 P.2d at 1366.

32. *Id.* at 1366–67.

33. *Id.* at 1369 (quoting *Davis v. Bandemer,* 478 U.S. 109, 133, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986)).

34. *Id.*

35. *Id.* at 1370, 1372.

36. *Id.* at 1366–67.

being improperly deprived of majority control in the Assembly. But as we have explained before:

Kenai Peninsula Borough does not entitle political subdivisions to control a particular number of seats based upon their populations. Kenai Peninsula Borough simply held that the board cannot intentionally discriminate against a borough or any other politically salient class of voters by invidiously minimizing that class's right to an equally effective vote.[37]

Moreover, the Borough's plan was adopted over Braun's by a majority vote. And his claim that rural residents are being deprived of representation does not find support in the record.

Though he does not cite it, the third factor Braun lists, which concerns integrated socio-economic areas, refers to language from article VI, section 6 of the Alaska Constitution. But article VI governs legislative apportionment, not municipal apportionment.[38] Municipal apportionment is governed by statute.[39] Furthermore, the language Braun cites is specific to apportionment of *house districts*,[40] and we have declined to extend this language even to apportionment of senate districts,[41] which, unlike municipal apportionments, are legislative in nature and implicated elsewhere in article VI. To the extent that Braun's argument is not a reference to article VI but instead a broader attack on the quality of the 2004 plan for its failure to "provid[e] as nearly as practicable for relatively integrated socio-economic areas," that

contention calls on this court to decide whether the 2004 reapportionment plan is the best plan, rather than whether it is simply constitutional. We are authorized to consider only the latter. As we noted in *Kentopp*:

It cannot be said that what we may deem to be an unwise choice of any particular provision of a reapportionment plan from among several reasonable and constitutional alternatives constitutes "error" which would invoke the jurisdiction of the courts.[42]

Nor has Braun proven the purposefulness of the exclusion he alleges, as *Kenai* requires,[43] beyond his own conclusory statements. Even the Liebowitz letter addressed to the Department director, which refers to the 2002 plan, not the 2004 plan, states only that Liebowitz found "evidence—not proof, but evidence—that the district lines were drawn for the specific purpose of preserving three assembly seats for the Anderson/Clear district."

Ultimately, as Braun has recognized, the basis of his constitutional claim is "a very fact-intensive inquiry." But in the context of reapportionment plans, our review is deferential; as long as the reapportionment plan is "reasonable and not arbitrary," [44] we must uphold it. In light of the *Kenai* standard to prove a constitutional claim in reapportionment cases, and in light of the deference accorded to the Assembly and the Commissioner in this context,[45] Braun's federal equal protection claim fails.

**37.** *In re 2001 Redistricting Cases*, 44 P.3d 141, 144 (Alaska 2002) (quotations omitted).

**38.** The plain language of article VI makes it clear that it governs senate and house apportionment. Alaska Const. art. VI.

**39.** *See* AS 29.20.060–.120.

**40.** "Each house district shall be formed of contiguous and compact territory containing as nearly as practicable a relatively integrated socio-economic area." Alaska Const. art. VI, § 6.

**41.** *Kenai*, 743 P.2d at 1365 ("[W]e hold that the provisions of article VI, section 6 which set forth socio-economic integration, compactness and contiguity requirements are inapplicable to redistricting and reapportionment of senate districts.").

**42.** 652 P.2d at 462.

**43.** 743 P.2d at 1369 ("In summation, proof of purposeful discrimination alone is insufficient to state a cause of action for political gerrymandering. The plurality in *Bandemer* would require additional proof that the group has been consistently and substantially excluded from the political process ... in order to raise a constitutional claim.").

**44.** *Kentopp*, 652 P.2d at 462; *Kenai*, 743 P.2d at 1363.

**45.** The Borough characterizes Braun's attack on the constitutionality of the 2004 plan as an administrative appeal. Braun contests this characterization and points out that his case challenging the constitutionality of the 2004 plan was

### b. The 2004 Denali Borough reapportionment plan does not violate the Alaska equal protection clause.

We employ a three-part test to evaluate equal protection challenges under the Alaska Constitution.[46] We first consider what weight is afforded the constitutional interest impaired by the challenged action.[47] We next consider the purposes served by the challenged action, and we evaluate lastly the state's interest in the particular means used to achieve those purposes.[48] In the context of reapportionment cases, the Alaska Constitution's equal protection standard is stricter than its federal counterpart.[49]

In examining whether an apportionment plan violated the equal protection clause of the Alaska Constitution, we held in *Kenai* that "a voter's right to an equally geographically effective or powerful vote" is, "while not a fundamental right, . . . a significant constitutional interest."[50] The right of Healy area voters to be grouped in one district and enjoy majority control in the Assembly is therefore significant, but not fundamental.

Next, we must consider what purposes are served by the challenged action. In *Kenai,* it was undisputed that the Board deliberately fashioned the reapportionment plan to prevent another "Anchorage" seat.[51] Once a discriminatory intent is proven, "redistricting will be held illegitimate unless that redistricting effects a greater proportionality of representation."[52] Because the Board's intent in *Kenai* was facially discriminatory, and because its effect was to create greater disproportion, we held that the redistricting plan violated the equal protection clause of the Alaska Constitution.[53]

But here, Braun has not proven that the 2004 reapportionment plan was developed to purposefully disenfranchise Healy area voters. Beyond his own conclusory statements and the qualified concern Liebowitz expressed regarding the 2002 plan, which she described as "evidence—not proof, but evidence" that the district lines may have been drawn for a specific purpose, there is nothing in the record proving the Borough's intent to disenfranchise Healy area voters in the 2004 plan. Indeed, the Commissioner, to whose view we accord deference on questions of law requiring agency expertise and on questions of fact, explicitly determined that the district lines were *not* drawn to achieve any particular outcome. As discussed above, Braun's constitutional claim is "a very fact-intensive inquiry," and as long as the reapportionment plan is "reasonable and not arbitrary," [54] we must uphold it. Braun has not established that the Borough intentionally discriminated against Healy area voters in developing the 2004 plan, and he has not overcome the deference we accord the Assembly and the Commissioner in the reapportionment context.[55] His equal protection claim under the Alaska Constitution fails.

### C. The Superior Court Did Not Err in Determining that *Braun IV* Was an Election Contest and in Granting the Borough's Motion for Summary Judgment.

Judge Pengilly granted the Borough's motion for summary judgment in *Braun IV* because he concluded that the case was an unsuccessful election challenge. Braun appeals that conclusion.

The purpose of an election contest is "to ascertain whether the alleged im-

filed before administrative review of the plan was completed. But we need not reach this dispute because it does not affect the result. Under *Kentopp* and *Kenai,* our review of reapportionment plans must be deferential.

**46.** *Kenai,* 743 P.2d at 1371.

**47.** *Id.*

**48.** *Id.*

**49.** *Id.*

**50.** *Id.* at 1372.

**51.** *Id.* at 1370.

**52.** *Id.* at 1372.

**53.** *Id.* at 1372–73.

**54.** *Kentopp,* 652 P.2d at 462.

**55.** *See id.*

propriety in fact establishes doubt as to the validity of the election result." [56] For this reason, "[w]hether a cause of action should be deemed an election contest [ ] turns on the remedy sought." [57] If the plaintiff's proposed remedy "would defeat the public interest in the stability and finality of election results, it is appropriate to deem the cause of action an election contest and to require compliance with the procedures for such contests." [58] A cause of action is deemed not to be an election challenge only if "the remedy will not affect the stability and finality of the election result." [59]

Braun asserts that his lawsuit is "ultimately a claim for judicial review of [the Borough's] plan of apportionment," and that it does not "challenge the validity of the election result approving the 2004 apportionment." [60] But the remedy he sought before Judge Pengilly was "a judgment prohibiting the use of the reapportionment plan ... approved by the voters on November 2, 2004 in future elections." And in his October 2007 reply brief for the consolidated case, Braun asked that we

> [e]nter a judgment declaring that the apportionment plans approved by voters in the February 19, 2002 special election and the November 2, 2004 regular election violated the state and federal constitutions *and order the results of those elections void* [.]

(Emphasis added.) Applying this remedy would clearly "defeat the public interest in the stability and finality of election results" [61] by nullifying the 2004 elections. Moreover, the 2004 election was itself held pursuant to a settlement that invalidated the 2002 election. If the next reapportionment scheme is also put before the electorate, it would be the third election on the subject—a situation that, in itself, would seriously undermine the public's confidence in the finality of election results. The superior court did not err in concluding that his case was an election challenge.

▮▮▮ We next consider, viewing the evidence in the light most favorable to Braun, whether the superior court erred in concluding Braun's election challenge was unsuccessful as a matter of law. Under AS 15.20.540, an election may be contested on the following grounds: "(1) malconduct, fraud, or corruption on the part of an election official sufficient to change the result of the election; (2) when the person certified as elected or nominated is not qualified as required by law; [or] (3) any corrupt practice as defined by law sufficient to change the results of the election." We "apply a higher standard of review for post-election challenges to ballot language than ... [for] pre-election challenges." [62] In a post-election challenge such as the one at bar, it is insufficient to establish "a lack of total and exact compliance with the constitutionally and statutorily prescribed form of ballot." [63] Rather, the challenging party has "the dual burden of showing that 'there was both a significant deviation from statutory direction, and that the deviation was of a magnitude sufficient to change the result of the election.'" [64]

Here, Braun made clear both in oral argument before Judge Pengilly and in his brief-

---

56. *Walleri v. City of Fairbanks*, 964 P.2d 463, 466 (Alaska 1998) (quoting *Boucher v. Bomhoff*, 495 P.2d 77, 80 (Alaska 1972)).

57. *Walleri*, 964 P.2d at 466; *see also DeNardo v. Municipality of Anchorage*, 105 P.3d 136, 140 (Alaska 2005) (holding that a cause of action was an election challenge where the plaintiffs sought "to void Proposition 2, a remedy that would both overturn the proposition and mandate a runoff in the mayoral election").

58. *Walleri*, 964 P.2d at 466.

59. *Id.*

60. In the first paragraph of the *Braun IV* complaint, Braun stated: "This is an election contest seeking judicial review of the regular election held in the Denali Borough on the 2nd day of November 2004." In his appeal, Braun argues this phrasing was "a procedural error by a pro se litigant" and mischaracterizes his claim. But Judge Pengilly did not mention this paragraph in his decision; he concluded *Braun IV* was an election challenge on independent grounds.

61. *Walleri*, 964 P.2d at 466.

62. *DeNardo*, 105 P.3d at 141.

63. *Boucher*, 495 P.2d at 80.

64. *Denardo*, 105 P.3d at 141 (quoting *Dansereau v. Ulmer*, 903 P.2d 555, 559 (Alaska 1995)).

ing to this court that he challenges the constitutionality of the 2004 election's subject matter, not the fairness of its procedures. Braun does not claim, and nothing in the record indicates, that the November 2004 election was marred by "malconduct, fraud, or corruption on the part of an election official sufficient to change the result of the election" or by "any corrupt practice as defined by law sufficient to change the results of the election." [65] Nor does Braun claim that a "person certified as elected or nominated is not qualified as required by law." [66] Braun's election challenge does not adhere to the grounds outlined in AS 15.20.540, nor has he proven the "significant deviation from statutory direction ... sufficient to change the result of the election" that is required in a successful election challenge.[67] Judge Pengilly did not err in concluding that Braun's election challenge was unsuccessful as a matter of law.

### D. Braun's Other Claims in *Braun IV* Are Meritless.

Braun raises three additional claims in his appeal of *Braun IV*: (1) that both Judge Pengilly's decision directing Braun to seek relief before Judge Olsen and the settlement agreement itself "created a process that is contrary to established law"; (2) that "the trial courts" [68] erred by "not demanding discovery and [by] allowing the opposing attorneys and the State of Alaska to withhold evidence"; and (3) that the superior court judges who have adjudicated his lawsuits are biased and "have facilitated efforts to avoid discovery and cover up evidence of illegal actions by the State of Alaska and the Denali Borough."

#### 1. Braun's claims regarding the creation of a "process that is contrary to established law" fail.

■ Braun claims that Judge Pengilly "created a process that is contrary to estab-

lished law" by directing Braun to seek relief in the case before Judge Olsen, and that "there is no provision in [the] Alaska Statutes for successive remedies to be challenged in this manner." But as discussed above, the case before Judge Pengilly (*Braun IV*) was inextricably linked to the case before Judge Olsen (*Braun I*) because the settlement brokered to resolve *Braun I* hinged on the constitutionality of the 2004 reapportionment plan, a subject implicated in *Braun IV*. For the same reason that Judge Olsen had jurisdiction to consider the constitutionality of the 2004 plan, Judge Pengilly's decision directing Braun to seek relief in the case before Judge Olsen did not "create[ ] a process that is contrary to established law." Similarly, Braun's argument that the settlement agreement created a process contrary to law because it "allow[ed] the Denali Borough to delay 'fair and effective representation' ... in Denali Borough by repeatedly putting forth illegal apportionment plans" must fail as we have already concluded that the 2004 reapportionment plan is constitutional.

#### 2. The trial courts did not err in their treatment of discovery as Braun alleges.

■ Braun argues that the trial courts erred in their treatment of discovery by "not demanding discovery and [by] allowing the opposing attorneys and the State of Alaska to withhold evidence." But Braun did not preserve this objection for appeal because he did not request discovery in *Braun IV*, a point the Borough makes and Braun does not contest.[69] Moreover, even had he done so, the issue would be moot. Because Braun conceded that he was not contesting the procedures by which the 2004 election was held, no amount of evidence would transform *Braun IV* into a valid election challenge.

---

65. AS 15.20.540.

66. *Id.*

67. *Denardo*, 105 P.3d at 141 (quotations omitted).

68. Braun does not specify which trial courts he means, although his subsequent discussion men-

tions both "the Olsen case" (*Braun I*) and "the Pengilly case" (*Braun IV*).

69. *See Duffus v. Duffus*, 72 P.3d 313, 317 (Alaska 2003) (noting that "we have long adhered to the tenet that matters not raised at trial will not be considered on appeal" (quotations omitted)).

Nor has Braun preserved a discovery objection in *Braun I,* for as he notes, the parties chose to forgo discovery in that case on the issue of constitutionality.[70]

### 3. Braun's claim of bias fails.

■ Braun's next claim is a general allegation of bias and judicial misconduct on the part of the judges who have presided over his various lawsuits:

> The record indicates that [t]rial [c]ourt [j]udges were "manifestly erroneous," not impartial, and have facilitated efforts to avoid discovery and cover up evidence of illegal actions by the State of Alaska and the Denali Borough. I argue that some in the Fairbanks Court are aiding the State of Alaska, the Denali Borough and Mr. Walleri in an attempt to quash my appeal before this court.

Braun also accuses his former attorney of deliberately withholding crucial evidence and claims that permitting the attorney to withdraw from his cases without appointing a replacement was an example of misconduct on the part of the courts involved.[71] The "overall plan," Braun asserts, "appears to be to narrow the focus and withhold evidence in [Judge Olsen's case] so that my prosecution of that case fails for lack of evidence."

■ As we have noted, "the Alaska Code of Judicial Conduct requires that [i]n the performance of judicial duties, a judge shall act without bias and prejudice and shall not manifest [such bias or prejudice] by words or conduct." [72] Where a judge has a

"personal bias or prejudice concerning a party or a party's lawyer," that judge should be disqualified.[73] But the burden of proof is on the party alleging bias,[74] and the issuance of a ruling adverse to that party is not, in and of itself, sufficient to meet the burden.[75]

There is no evidence in the record to suggest that any of the judges involved in Braun's cases were biased against him. Declining to appoint counsel is not an indication of bias here because Braun's claims do not fall within any of the categories of civil cases for which appointment of counsel is required.[76] And we have already concluded that the trial court's treatment of discovery was not error. Furthermore, despite declining to decide the issue, Judge Pengilly actually provided Braun a list of "three possible methods of challenging the constitutionality of the Denali Borough voting districts." Braun's claim of bias fails.

### E. Braun Is Not Entitled to Attorney's Fees in *Braun IV.*

Finally, Braun seeks a judgment declaring him to be a public interest litigant and awarding him his costs and attorney's fees in *Braun IV.* Alaska Statute 09.60.010(c)(1) provides that "[i]n a civil action ... concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court ... shall award ... full reasonable attorney fees and costs to a claimant, who, as plaintiff ... has prevailed in assert-

---

70. Braun states in his brief that "Mr. Walleri [counsel for Braun] and Mr. Gorski [counsel for the Borough] agreed, for their own reasons, to [forgo] discovery relative to the equal protection issue...."

71. Braun states that he fired Walleri in *Braun IV* and that two of the other judges presiding over his cases permitted Walleri to withdraw. He appears to claim that each of these judges should have appointed counsel for him.

72. *Hanson v. Hanson,* 36 P.3d 1181, 1184 (Alaska 2001) (alteration in original) (quotations omitted).

73. *Id.*

74. *See, e.g., Nelson v. Jones,* 781 P.2d 964, 972 (Alaska 1989) (stating, in the context of a motion to disqualify, that the appellant "was required to

establish that the prior adverse rulings were the result of personal bias developed from a nonjudicial source").

75. *See Lacher v. Lacher,* 993 P.2d 413, 421 (Alaska 1999) (declining to reverse a trial judge's refusal to recuse himself where the appellant's claim of bias was "little more than an expression of [her] dissatisfaction with the superior court's ruling").

76. *See, e.g., Midgett v. Cook Inlet Pre-Trial Facility,* 53 P.3d 1105, 1111 (Alaska 2002) (requiring counsel for "cases involving termination of parental rights, child custody, paternity suits, and civil contempt proceedings for nonpayment of child support" (citations omitted)).

ing the right." But because Braun did not prevail on the claims he asserted in *Braun IV*, he is not entitled to attorney's fees in that action.

## V. CONCLUSION

Braun is entitled to attorney's fees and costs for his challenge to the 2002 reapportionment plan under the catalyst theory. We therefore REVERSE Judge Olsen's decision to the contrary and REMAND for consideration of the appropriate award. But we AFFIRM Judge Olsen's decision upholding the constitutionality of the 2004 Denali Borough reapportionment plan, and we AFFIRM Judge Pengilly's grant of summary judgment to the Borough regarding Braun's challenge of the 2004 election. Braun's remaining claims in *Braun IV* also fail. Accordingly, Braun is not entitled to attorney's fees in that case.