2004 WY 19

C.A. "Al" SNELL; R.M. "Bob" Wagner; and John Trierweiler, Appellants (Defendants),

v.

JOHNSON COUNTY SCHOOL DISTRICT NO. 1, Appellee (Plaintiff).

Wayne T. Voss, Stan Wostenberg, Jane Wostenberg and David Hamilton, Petitioners,

v.

Washakie County School District No. 1, Respondent.

Nos. 03–121, 03–151.

Supreme Court of Wyoming.

March 8, 2004.

Representing Appellants, C.A. "Al" Snell, R.M. "Bob" Wagner, John Trierweiler, Wayne T. Voss, Stan Wostenberg, Jane Wos-

tenberg and David Hamilton: John R. Hursh of Central Wyoming Law Associates, Riverton, Wyoming.

Representing Appellee Johnson County School District No. 1: Timothy J. Kirven of Kirven & Kirven, Buffalo, Wyoming.

Representing Appellee Washakie County School District No. 1: William R. Shelledy, Jr. and Edward G. Luhm of Scott, Shelledy & Luhm, P.C., Worland, Wyoming.

Before GOLDEN, LEHMAN, KITE, and VOIGT, JJ.; and STEBNER, D.J.

KITE, Justice.

[¶ 1] These cases involve challenges to the use of funds obtained from the sale of bonds to construct school facilities and present questions concerning the effect of our opinions in *State v. Campbell County School District*, 2001 WY 19, 19 P.3d 518 (Wyo.2001) (*Campbell II* ) and *State v. Campbell County School District*, 2001 WY 90, 32 P.3d 325 (Wyo.2001) (*Campbell III* ), and the resulting statutory changes on pending school bond issues. The cases were consolidated for purposes of argument and the district court in each case certified two questions to this Court for resolution. While those questions are slightly different in each case, at bottom they ask 1) whether the challengers' claims are barred as untimely, and 2) whether the bond proceeds can be used to fund certain school facilities. We hold the challengers are not barred from raising issues related to the use of the funds. However, we further hold neither the *Campbell II* nor *Campbell III* decisions, nor the revised statutes, which became effective after the bond elections, have any effect upon the school districts' authority to use the proceeds from the sale of bonds authorized by the elections.

## CERTIFIED QUESTIONS:

[¶ 2] *Snell v. Johnson County School District No. 1*, No. 03–121:

1. Are defendants barred by W.S. § 22–21–107 from initiating in 2003, a contest of the November 6, 2001 bond election in Johnson County?

2. Can Johnson County School District No. 1 use the bond proceeds from a November 6, 2001 bond election to fund local enhancements in a pipeline project?

[¶ 3] *Voss v. Washakie County School District No. 1*, No. 03–151:

1. Are Petitioner's claims barred, by initiating in April of 2003, a challenge of the November 7, 2000, bond election in Washakie County, by application of W.S. § 22–21–107; W.S. § 21–13–706(b)(vi); W.S. § 21–13–706(c); by the doctrines of laches, estoppel and waiver or the applicable statute of limitations, or by their failure to join necessary and/or proper parties to the action?

2. Can Washakie County School District No. 1 use the bond proceeds from the November 7, 2000, bond election to fund local enhancements in a "pipeline project"?

## FACTS

[¶ 4] From 1995 to the present, the state's public school finance system has undergone significant change. This Court has addressed problems of inequality in the financing of public schools in three separate opinions, *Campbell County School District v. State*, 907 P.2d 1238 (Wyo.1995) (*Campbell I*), *Campbell II*, and *Campbell III*. In response to those opinions, the legislature enacted many new statutes and changed the manner in which school operations and construction are funded. This process of change has occurred over the last nine years and is continuing. We think it is safe to say that change will inevitably continue to occur into the future as the legislature and the school districts struggle to develop the most effective and equitable public school finance system possible. These cases demonstrate the problems the school districts face because their work of providing education to the state's children must go on amid these times of change.

[¶ 5] Historically, school construction was financed entirely through property taxes and the funds available varied widely from county

to county as a result of the differing assessed values of property in each county. Twenty-four years ago, this Court held that system violated the state's constitution and mandated "statewide availability from total state resources for building construction or contribution to school buildings on a parity for all school districts." *Washakie County School District No. 1 v. Herschler,* 606 P.2d 310, 337 (Wyo.1980). In *Campbell I,* we reviewed the legislative changes made in response to the *Washakie* opinion and found that combination of loans and grants had not adequately addressed the deficient public school facilities identified by the state. We declared that system unconstitutional. *Campbell I,* 907 P.2d at 1275. In response to that opinion, the Wyoming Department of Education financed a study to score all buildings in each school district based on various categories of capital construction needs. This report, generally identified as Wyoming Department of Education Statewide Schools Facilities Assessment, identified certain schools in immediate need of capital construction. In 1999, the legislature acted to address the constitutional infirmities of the school capital construction statutes and enacted Wyo. Stat. Ann. § 21–15–111 (Lexis 1999), which established a process whereby school districts could receive state funding for capital construction of school facilities. That statute required the districts to certify they had used ninety percent of their bonding capacity authorized by art. 16, § 5 of the Wyoming constitution before being eligible to receive state funding. In *Campbell II,* we concluded that § 21–15–111 was unconstitutional because it again resulted in wealth-based disparities in school construction financing. *Id.* at 556–566. As a result of that decision, in 2002 the legislature completely overhauled the statutory scheme for capital construction of public schools and created a statewide program for funding construction of facilities necessary to meet state-determined adequacy standards. Wyo. Stat. Ann. §§ 21–15–101 to 121 (LexisNexis 2002).

[¶ 6] Throughout all of these changes, the local school districts retained constitutional and statutory authority to fund school construction through the issuance of bonds. As part of the 2002 reformation of the state capital construction statutes, the legislature provided for specific new procedures for school districts to follow should they decide to issue bonds for facilities in "excess of the statewide standards for the adequacy of school buildings and facilities." [1] Wyo. Stat. Ann. § 21–13–701 (LexisNexis 2002). Those procedures included two public hearings at which the district was to explain the need to provide funding for facilities in excess of state standards. The legislature established March 11, 2002, as the effective date of that amended statute. 2002 Sp. Sess., Ch. 51 § 2.

[¶ 7] Throughout this constantly changing landscape of school finance law, individual districts in need of funding for deficient facilities faced the proverbial moving target in terms of the requirements and procedures. Those with pending applications for state funding became known as "pipeline" schools, meaning those in the pipeline for funding, but whose funding had not yet been approved. Johnson County School District No. 1 and Washakie County School District No. 1 (school districts) were such "pipeline" schools.

## Johnson County School District No. 1

[¶ 8] The Buffalo high school and the Kaycee middle/high school were both identified in *Campbell I* and *Campbell II* as schools in immediate need of capital construction. In 1999, when the district began the process of planning and designing new facilities to replace them, Wyo. Stat. Ann. § 21–15–111 was in effect, requiring the district to meet the ninety percent of bonded indebtedness limitation. The process for receiving a state grant for construction of the facilities required the district to certify that a bond issue, if needed to meet the ninety percent requirement, would be submitted to the voters within eighteen (18) months following submission of the application for the state grant. This Court issued its opinion in *Campbell II* on February 23, 2001, holding

---

1. This concept of allowing school districts to use otherwise available funding sources to fund facilities or programs in excess of those deemed by the state to be adequate was introduced in *Campbell I* and has become known as "local enhancements."

§ 21–15–111 unconstitutional. On March 20, 2001, we granted a petition for rehearing on limited issues. In August 2001, the school district issued a call for an election pursuant to Wyo. Stat. Ann. § 22–21–103 (Lexis 1998). Issuance of ballots and absentee voting began on September 5, 2001. On September 27, 2001, the school district issued its bond proclamation giving notice of an election on November 6, 2001, on the question of whether it would be allowed to issue general obligation bonds not to exceed $8,500,000 "for the purposes of erecting, equipping and furnishing a new high school in Buffalo and a new middle school/high school in Kaycee as well as enlarging, improving, remodeling, repairing, adding to, equipping and furnishing buildings ... within and for the district." This Court issued its opinion on the rehearing on October 2, 2001, in which it affirmed its holding that § 21–15–111 was unconstitutional. The election on the bond issue was held on November 6, 2001, as planned and the parties have stipulated that it complied in all respects with the procedural requirements of § 21–13–701. The bond issue passed with an affirmative vote. No one filed a contest of the election within fourteen (14) days as allowed by Wyo. Stat. Ann. § 22–21–107 (LexisNexis 2003).

[¶ 9] On April 14, 2002, the state approved the school district's application for funding under the new statutes governing capital construction of schools. However, the state denied the portion of the application which sought funding for an auditorium and other facilities. The same day, the school district approved the use of a portion of the bond issue authorized in the November 6, 2001, election for those facilities that the state had rejected, including the auditorium. C.A. "Al" Snell, R.M. "Bob" Wagner, and John Trierweiler (challengers) immediately served their notice of governmental claim with the school district contesting the use of

the bond funds for what they deemed were "local enhancements" without following the procedures required in the amended statutes. On April 18, 2003, the school district filed a complaint seeking a declaratory judgment that the sale of the bonds was proper and the funds could be expended for construction of the auditorium and the other facilities. The school district also filed an amended complaint seeking to enjoin the challengers from contesting the action claiming § 22–21–107 [2] prevented them from doing so. The challengers answered and filed a counterclaim seeking a declaration that the election was void *ab initio*. The school district filed a motion to dismiss, which was treated as a motion for summary judgment, and thereafter the parties filed cross motions for summary judgment. The challengers also filed a motion to certify the issue to this Court and the district court ultimately certified the two questions to this Court, which we agreed to answer. The bonds have not been sold due to the pending litigation.

### Washakie County School District No. 1

[¶ 10] The state's study of school construction needs, as noted in *Campbell II*, identified the Worland middle school, like the Johnson County schools, as being in immediate need of capital construction. The school district began discussing how to address that need in May 1998. On August 24, 2000, it applied for a state grant to fund construction of a middle school with an attached auditorium under the statute then in place, which required the school district to certify it had used ninety percent of its indebtedness capacity. Simultaneously, the school district called for an election on November 7, 2000, pursuant to § 22–21–103, requesting the voters' authorization of general obligation bonds not to exceed $6,030,000 for the purpose of "construction of a new middle school and [a] new auditorium." The election was held on

---

2. "**22–21–107.** Contests; procedure. Any five (5) qualified electors of the political subdivision may contest an election on the question of the creation of an indebtedness upon filing in the district court of any county in which the political subdivision is wholly or partially located, within fourteen (14) days after the result of the election shall have been determined, a petition alleging an error that would change the result of the

election, in like form as in other cases of contested elections in the district court. The political subdivision shall be made defendant, and process shall be served upon the clerk of the governing body or other chief clerical officer as in other civil actions. No civil action contesting the results of such an election or alleging election errors may be commenced after the expiration of such fourteen (14) day period."

November 7, 2000, and the proposal received an affirmative vote. On February 27, 2001, four days after this Court's opinion in *Campbell II* was issued, the legislature passed an appropriation of $10.9 million for the new middle school project and required further plans and engineering to be submitted to the Joint Appropriation Committee by December 1, 2001. On February 28, 2002, the legislature passed an appropriation for $11.9 million for what the state considered an adequate middle school, but which did not include an auditorium. After consulting with counsel concerning the impact of *Campbell II* and *III*, the school district proceeded with selling bonds up to $3.5 million to fund construction of the auditorium. The bonds were sold on June 20, 2002, and were included in the 2002 Washakie County tax levies. All payments for 2002 property taxes included an amount for the bonds in question and on January 15, 2003, the Washakie County Treasurer paid $147,548.74 on the bonds. The school district signed a contract with its general contractor on January 27, 2003, and bids were opened for sub-contractors on March 12, 2003, with construction to commence May 12, 2003. Wayne T. Voss, Stan Wostenberg, Jane Wostenberg and David Hamilton (challengers) filed a notice of claim under the Governmental Claims Act on April 7, 2003, and a petition for declaratory judgment and injunctive relief on April 11, 2003, seeking a declaration that the bond proceeds could not be used to fund local enhancements and an injunction barring the expenditure or commitment of funds to the project until the declaratory judgment had been resolved. The school district filed a motion to dismiss the petition claiming the challengers were barred from challenging the bond election by Wyo. Stat. Ann. §§ 22–21–107, 21–13–706(b)(vi) and (c),[3] and the doctrines of laches, estoppel, waiver, and failure to join indispensable parties. The district court held a hearing on May 8,

2003, on the motion to dismiss and the motion for a temporary restraining order, and denied both. The challengers then sought certification of the matter to this Court, and the district court did so on July 29, 2003. We agreed to accept certification on August 12, 2003.

## DISCUSSION

### *Are Challengers Barred from Objecting to the Use of the Bond Funds By Statute or Laches, Estoppel, Waiver, or Failure to Join Necessary and/or Proper Parties?*

[¶ 11] The school districts contend the challengers are barred from making their claims by § 22–21–107, which allows electors to contest bond elections providing they do so within fourteen (14) days after the result of the election has been determined, and Wyo. Stat. Ann. § 21–13–706(b)(vi) and (c), which provide bonds issued under the authority of the statute and with the proper recitals "shall be incontestable for any cause whatsoever after their delivery for value." The challengers respond first by arguing the election contest statute does not apply to their claims because they do not complain about the election procedures. Instead, they contend their claims are focused upon the use of the proceeds from bonds, which were authorized and issued when the state's unconstitutional ninety-percent bonded indebtedness requirement was in effect. With regard to the application of § 21–13–706(b)(vi) and (c), the challengers claim these types of self-executing bond validation statutes are aimed at barring contests between the parties to the bonds and not intended to prevent constitutional challenges to the use of funds derived from the sale of the bonds. We will first consider whether the fourteen-day statute of limitations for contesting bond elections applies to the challengers' claims.

3. "§ 21–13–706. Execution, form and contents of bonds

\* \* \*

(b) A bond delivered to the purchaser thereof in the optional statutory form shall:

\* \* \*

(iv) If not paid upon presentation at maturity, continue to draw interest until the principal thereof is paid in full;

(c) Any resolution of a school district board of trustees authorizing bonds may provide that each bond therein authorized shall recite that it is issued under the authority of this article. Such recital shall conclusively impart full compliance with all the provisions hereof, and all bonds issued containing such recital shall be incontestable for any cause whatsoever after their delivery for value."

[¶ 12] Title 22 of the statutes addresses procedures for all elections; Chapter 17 establishes the procedures for election contests generally; and Chapter 21 sets out the procedures for bond elections specifically. Relevant provisions of Title 22 provide:

22–17–105. Grounds for contesting ballot propositions.

A ballot proposition which may by law be submitted to a vote of the people of a county, city or town, district, or other political subdivision may be contested by a petition of five (5) registered electors of the county, city or town, district or other political subdivision filed in the district court of the county not later than fifteen (15) days after the results of the election have been certified by the canvassing board. A ballot proposition contest is a civil action.

22–17–106. Grounds for contesting ballot propositions

(a) A ballot proposition may be contested for any of the following reasons:

(i) Misconduct or material negligence of an election official which affected the result of the election;

(ii) The election result was influenced by a bribe;

(iii) Illegal votes were counted or legal votes were not counted.

§ 22–21–107. Contests; procedure

Any five (5) qualified electors of the political subdivision may contest an election on the question of the creation of an indebtedness upon filing in the district court of any county in which the political subdivision is wholly or partially located, within fourteen (14) days after the result of the election shall have been determined, a petition alleging an error that would change the result of the election, in like form as in other cases of contested elections in the district court. The political subdivision shall be made defendant, and process shall be served upon the clerk of the governing body or other chief clerical officer as in other civil actions. No civil action contesting the results of such an election or alleging election errors may be commenced after the expiration of such fourteen (14) day period.

[¶ 13] These provisions must be read *in pari materia. Shumway v. Worthey,* 2001 WY 130, 37 P.3d 361 (Wyo.2001). The general contest provision sets forth three grounds upon which a ballot proposition can be contested in court: allegations of misconduct which affected the result of the election, bribery, or improper counting of votes. While the bond election contest statute does not proscribe specific grounds, it does specify "no civil action *contesting the results of such an election or alleging election errors* may be commenced after" the fourteen day period. Section 22–21–107. We believe it reasonable to conclude the legislature intended both contest procedures to apply to challenges of election procedures.

[¶ 14] The challengers concede the procedural requirements of the election statutes were met. However, they imply the voters were misled because the elections were conducted at a time when the statutes required school districts to use ninety percent of their debt limit, and thus, the public must have understood the bond issue was required before state funds could be received. Because *Campbell II* and *III* held that requirement unconstitutional, the challengers argue the voters were misinformed of the need for the bond issue. To the extent the challengers' claim in this regard challenges the election itself, it is barred as untimely because it was not filed within the fourteen day limit for election contests. Even if this claim was not time barred, we find no defect in the notice provided the public regarding the bond election. The bond questions clearly stated the purpose of the bonds as required by § 22–21–103. Johnson County's ballot proposition's stated purpose was "erecting, equipping, and furnishing a new high school." The challengers made no allegation the proposed auditorium was not part of the new high school. Washakie County's bond proclamation specifically identified a "new auditorium" in conjunction with the new school. The challengers do not contend that the use of the funds for construction of auditoriums exceeds the statutorily authorized purposes or the description of the facilities contained in the ballot propositions. Instead, they suggest, without any

support in the record, that had the public known the statute which required the school districts to bond to 90% of their indebtedness limit was unconstitutional, the election result may have been different. Two flaws exist in that argument. First, the *Campbell II* and *III* opinions were issued prior to the Johnson County election, and therefore, these voters were aware funding of facilities necessary to meet state standards was the state's responsibility. Second, we have held that an allegation that the ballot proposition misled the public, absent fraud, intent to mislead or a violation of statute, must be accompanied by evidence the election result would have been different. *Anselmi v. City of Rock Springs*, 53 Wyo. 223, 80 P.2d 419 (1938). *See Johnson v. City of Cheyenne*, 504 P.2d 1081 (Wyo. 1973), *appeal dismissed sub nom.; Johnson v. Laramie County School District* No. 1, 414 U.S. 990, 94 S.Ct. 342, 38 L.Ed.2d 229 (1973). The record in these cases contains no such evidence.

[¶ 15] The essence of the challengers' claim is that this Court's opinions and statutes adopted after the elections call into question the propriety of using the bond proceeds for local enhancements without having complied with the new procedures. However, the challengers themselves raised the prospect that the fourteen-day statute of limitations applied when they sought a declaration that the election was void *ab initio* and "a legal nullity." When their pleadings are read as a whole, it appears clear the focus of their ire is on the use of the funds without following the new statutory procedures, not the conduct of the elections that occurred.

■ [¶ 16] This distinction is important to our determination of whether the election contest statute applies to the challengers' claims. To the extent the election itself is contested, the plain language of the statute commands all such contests be filed within fourteen days of the determination of the election results. The obvious purpose of the short timeframe within which election con-

tests must be filed is to assure finality of the election process. We have enforced strict observance of the election contest statutes. *Johnson*, 504 P.2d at 1082. However, where allegations are made of both election procedural errors and constitutional infirmities in the manner in which bond funds are proposed to be used, we have entertained the latter complaints even though raised after the fourteen-day limit of the election contest statutes. *Hyatt v. Big Horn District No. 4*, 636 P.2d 525 (Wyo.1981). The petitioners in the *Hyatt* case complained that the proceeds of a bond election were being applied within the district in a discriminatory fashion. After dismissal of the claims related to the election irregularities, this Court considered the alleged inequitable use of the bond proceeds even though it appears clear the challenge was not filed within the fourteen-day limit.[4] We find a similar approach appropriate in this case. Simply because the legislature sought election finality does not mean taxpayers were forever foreclosed from challenging the manner in which school districts use the proceeds from the bonds authorized by such an election.

[¶ 17] Courts in other jurisdictions have reached similar results. In *Shadow v. Rapides Parish School Board*, 220 La. 302, 56 So.2d 555 (1951), persons challenging the consolidation of two school districts, and the assumption by one district of the debt of the other, filed after the time required for election contests. However, they made multiple claims, some directed at the propriety of the election itself and others at constitutional issues involved in the assumption of the debt by the one district. The court held the challenges to the election were barred by the time limit in the election contest statute, but the claims regarding the sale of the bonds were not barred and, finding the claims meritorious, the sale was enjoined.

■ [¶ 18] The challengers argue the election contest statute does not apply to constitutional claims. We find that argument misses the mark. If a constitutional claim

---

4. The opinion addresses the issue of laches and notes the district court found the petitioners withheld their objections and "allowed the Defendants to proceed with plans and the start of construction" which suggests the claims were not filed within the then applicable ten day period after the election.

relates to the conduct of the election, we see nothing in the statute to suggest such a claim must not also be brought within the fourteen-day period. Faced with similar arguments, other jurisdictions have likewise found election contest statutes must be complied with even when the contest is based upon a constitutional claim. *Beatty v. Metropolitan St. Louis Sewer Dist.*, 700 S.W.2d 831 (Mo.1985); *Taxpayers, for Sensible Priorities v. City of Dallas*, 79 S.W.3d 670 (Tex.App.2002).

[¶ 19] With regard to Johnson County School District, the challengers claim the school district initiated the litigation by filing a declaratory judgment action and that prevents it from claiming the election contest applies. We fail to see how the school district's action, which was in direct response to the challengers filing a notice of claim under the Wyoming Governmental Claims Act, waived its right to argue the election contest statute barred their claim. The challengers filed a cross claim within the declaratory judgment action, which represented their contest of the election in the judicial forum. The statute required that filing to occur within fourteen days of the election to the extent it challenged the election process. The question is not who took the first swing in this fight, but whether the challenge was aimed at the use of the funds as well as the conduct of the election. The former survives, even though it was not filed within fourteen days, the latter does not.

[¶ 20] The certified questions in the Washakie County School District case also included whether § 21–13–706(b)(vi) and (c) apply to bar the challengers' claims. Subsection (b)(vi) provides that school bonds issued by a district and delivered to a purchaser shall "be incontestable as hereafter provided." Subsection (c) then provides "Any resolution of a school district board of trustees authorizing bonds may provide that each bond therein authorized shall recite that it is issued under the authority of this article. Such recital shall conclusively impart full compliance with all the provisions hereof, and all bonds issued containing such recital shall be incontestable for any cause whatsoever after their delivery." The Johnson County bonds were not sold, pending the resolution of this litigation, but the Washakie County bonds were. While the record does not specifically indicate whether those bonds contained such a recital, we will presume they did. The question then becomes whether the fact that those bonds are by statute now uncontestable bars the challengers' claim that the proceeds from the sale of those bonds cannot be used for the auditorium without compliance with the new statutory procedures.

[¶ 21] We fail to see how the statute which provides that the bonds "delivered to the purchaser," or in other words sold, are uncontestable, prevented the challengers from claiming the proceeds from that sale cannot be used as proposed by the school district. A bond is simply evidence of a debt on which the governmental body promises to pay the bondholders a specified amount of interest for a specified length of time and to repay the loan on the expiration date. *Black's Law Dictionary*, 169 (7th ed.1999). The only effect of the statute was to assure that no one could contest that Washakie County School District must repay the bondholders as provided by the terms of the bonds. Whether they had statutory authority to use the proceeds from the sale of the bonds as they did, and propose to continue to do, is an entirely unrelated question. Thus § 21–13–706(b)(vi) and (c) did not bar the challengers' claims regarding the use of the bond proceeds.

[¶ 22] The Washakie County School District also claims the challengers were barred by the doctrines of laches and estoppel because they were aware of the *Campbell* decisions and the amended statutes long before they filed their claims. The challengers respond by arguing they raised their objections in the political forum in the hope the school districts would decide not to use the funds without following the new statutory procedures. We see nothing in the challengers' actions that would justify application of either laches or estoppel. As a further ground for its argument that challengers' claims are barred, Washakie County School District claims the challengers failed to join the contractors and the purchasers of the bonds as indispensable parties under Rule 19, W.R.C.P. However, they cite no authority

and make no cogent argument for that proposition and, therefore, we decline to address it. *Burnham v. Coffinberry*, 2003 WY 109, 76 P.3d 296 (Wyo.2003).

### Use of Bond Proceeds for Local Enhancements

[¶ 23] Wyoming school districts are authorized by § 21–13–701 to incur indebtedness for construction of school buildings subject to the constitutional limitation that such debt shall not exceed ten (10) percent of the assessed value of the taxable property. Art. 16, § 5. At the time both the Johnson and Washakie County elections occurred, the statute authorized schools to seek voter approval of indebtedness for any facilities "which ... enables the district to provide facilities which are adequate to provide educational programs required" and provided, "the purposes for which an indebtedness may be created shall be broadly construed." Section 21–13–701(b). Also at that time, school districts obtained most of the funding for school facilities through property taxes and the state only stepped in after school districts had reached 90% of their bonded indebtedness limit. Section 21–15–107. In 2002, as part of the changes in state financing of capital construction of school facilities made in response to *Campbell II and III,* the state assumed responsibility for funding all facilities which are necessary to meet state standards. In an effort to continue to authorize local districts to incur voter-approved debt to construct school facilities, however, the legislature amended § 21–13–701 to provide school districts could incur such debt for facilities "in excess of statewide standards for the adequacy of school buildings and facilities." Section 21–13–701(b) (LexisNexis 2002). If a district chooses to do so, the statute now requires school districts to hold at least two (2) public hearings before submitting the issue to the voters at which time the school board "provides an explanation of the need to obtain district funding for building and facility features that are in excess of state standards for building and facilities." Section 21–13–701(c) (LexisNexis 2002). The legislature established March 11, 2002 as the effective date of that amendment. 2002 Sp. Sess., Ch. 51 § 2.

[¶ 24] The challengers' objection to the use of the funds as proposed by the districts rests on the premise that somehow this Court's decisions in *Campbell II and III,* which spawned the new statutory requirement for two public hearings on bonds proposed for local enhancements, prohibited the use of bonds which had been approved by elections held when the ninety percent requirement, declared unconstitutional in those decisions, was in effect. They do not claim the amended statute applied retroactively which, of course, it could not and, by its own terms, did not. Instead, they are left with the contention that the effect of the *Campbell II and III* decisions, which were issued after the Washakie County election, but prior to the Johnson County election, must be read to have invalidated the statutes authorizing those elections. Leaving aside the question of whether a court's decision can retroactively invalidate an election as is suggested in the Washakie County situation, we believe the fundamental flaw in the challengers' premise is the suggestion that the *Campbell II and III* decisions had any effect upon the authority granted to the school districts by § 21–13–701. In *Campbell II,* this Court considered the constitutionality of § 21–15–107 which established the criteria for state funding of school construction and we held unconstitutional the requirement that local districts bond to ninety (90) percent of their capacity before they qualified for state funding. We held the constitution required equal funding for all schools and imposed on the state the responsibility for such funding for facilities necessary to provide an adequate education to Wyoming's children. We did not hold § 21–13–701, which authorized districts to incur debt to fund construction of school facilities, unconstitutional. Nor did we in any way limit the ability of school districts to perform their responsibilities by using funds from any source authorized by statute. Instead, we held unconstitutional the statute which withheld state funding until the 90% limit was met by districts.

[¶ 25] In fact, we explicitly stated in the last sentence of *Campbell II,* "[r]ecognizing the time required to remedy the constitutional deficiencies in the statutes, we authorize

school districts to continue to exercise their statutory authority to raise revenues to address capital construction needs in the interim." We do not know how we could have been any clearer. *Id.* at 566. And yet, we went even further in *Campbell III* to clarify that our ruling had no impact upon school districts'. authority to fund school construction through authorized means and stated:

> We agree with WEA that we must clarify that, from the date of our opinion, all bonds in place remain in effect. However, school districts are no longer required to have reached bonded indebtedness of ninety percent (90%) or more of their constitutional debt limitation imposed under Wyoming Constitution, art. 16, § 5 in order to receive state assistance for those capital construction projects identified in the MGT study. In *Campbell II*, we held that the legislature unconstitutionally relied upon local wealth by requiring local school districts to resort first to local resources for capital construction and to bond to ninety percent (90%) of their capacity before becoming eligible for state funding. Wyo. Stat. Ann. § 21–15–111(e) (Lexis 1999).
>
> Our decisions have neither eliminated nor reduced "local control" as it exists today. On the contrary, we have recognized a school district's right to rely upon some local funding to serve the purpose of improving the quality of education delivered to its students through innovation or modernization. The Wyoming Constitution permits school districts to impose bonded indebtedness up to a set limit. We have decided that the State cannot take this money from a local school district for any purpose.

*Id.* at 331.

 [¶ 26] We will try here again to make it clear. Our constitution requires the state to provide funding to all school districts to provide the facilities which the state has deemed necessary to meet state standards. Local school districts may fund local enhancements to those facilities from any source authorized by the legislature.[5] At the time of the elections in Johnson and Washakie counties, the statute authorized districts to incur debt to fund facilities without the requirement of public hearings or specific explanation by the board of why the facilities were needed. Our decisions in *Campbell II* and *III* did nothing to change that. By its own terms, the amended statute governing the procedures school districts must now follow to issue bonds for school construction does not apply retroactively. 2002 Sp. Sess., Ch. 51 §§ 1, 2.

[¶ 27] In each of the *Campbell* cases, this Court has recognized that time is required by the legislature and the school districts to make the constitutionally mandated changes. We have made every effort to assure the least disruption possible to the functioning of our public education system while those changes are implemented by making our rulings prospective. In *Campbell County School District v. Catchpole*, 6 P.3d 1275 (Wyo.2000), we honored the prospective nature of *Campbell I* by rejecting the argument that the statutes declared unconstitutional by that decision were unenforceable while the legislature acted to replace them. We do the same here.

[¶ 28] We hold Washakie County School District No. 1 has authority to use the bond proceeds from the 2000 bond election to fund the auditorium and other local enhancements under construction in that school district. Likewise, Johnson County School District No. 1 is authorized to sell the bonds authorized by the 2001 election and proceed with its plans to construct the Buffalo high school with the auditorium and other proposed local enhancements.

---

5. As noted in both *Campbell I and II*, there may come a time when local enhancements become the standard. As we said in *Campbell I*, "local enhancement may also result in substantive innovations which should be available to all school districts as part of a proper education. The definition of a proper education is not static and necessarily will change. Should that change occur as a result of local innovation, all students are entitled to the benefit of that change as part of a cost-based, state-financed proper education."