# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 61

APRIL TERM, A.D. 2013

*May 17, 2013*

PAUL ROCK, DARI QUIRK &
ERNEST KAWA,

Appellants
(Plaintiffs),

v.

MARY LANKFORD, in her official
capacity as Sublette County Clerk,

Appellee
(Defendant).

MARY LANKFORD, in her official
capacity as Sublette County Clerk,

Appellant
(Defendant),

v.

PAUL ROCK, DARI QUIRK, &
ERNEST KAWA,

Appellees
(Plaintiffs).

S-12-0216, S-12-0217

*Appeals from the District Court of Sublette County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Paul Rock, Dari Quirk, and Ernest Kawa:*
     Sky D. Phifer, Phifer Law Office, Lander, Wyoming

*Representing Mary Lankford, in her official capacity as Sublette County Clerk:*
     Neal R. Stelting, Sublette County and Prosecuting Attorney, Pinedale, Wyoming

**Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    In August of 2011, the voters of Sublette County approved a ballot proposition increasing the size of the county commission from three to five.  Before the proposed change could be implemented in the primary and general elections to be held in 2012, a second ballot proposition reducing the size of the commission from five back to three was submitted to the voters in May of 2012.  The proposition passed, and Sublette County Clerk Mary Lankford determined that the second proposition returned the size of the commission to three, and therefore held an election for the one commission seat which would have been open if there had been no ballot propositions.

[¶2]    Appellants Rock, Quirk, and Kawa challenged Lankford's decision, claiming that the additional seats permitted by the August 2011 ballot proposition could not be eliminated until they were filled, and that the May 2012 special election decreasing the number of seats was improper and void.  Lankford disagreed with Appellants' interpretation of the applicable statutes, and she moved to dismiss the complaint because it was untimely and brought by an insufficient number of electors under statutes governing ballot proposition contests.  The trial court denied the motion to dismiss, but agreed with Lankford that the May 2012 election was proper, and granted her summary judgment.

[¶3]    The case came to us as two separate appeals.  Appellants Rock, Quirk, and Kawa challenge the district court's decision as to the interpretation of the statute governing increases and decreases in county commissions in Case No. S-12-0216.  Lankford appeals the district court's decision denying her motion to dismiss in Case No. S-12-0217, and raises the same issue as an alternative ground for affirmance in Case No. S-12-0216. We find that Appellants' claims are an election contest, that they were not timely filed or brought by a sufficient number of electors, and that the district court lacked jurisdiction to consider the claims.  Although our decision upholds the 2012 election as did that of the district court, we find its decision to be void, and we remand for dismissal.

## ISSUES

[¶4]    1.    Did Appellants' claim amount to an election contest of a May 2012 ballot proposition under Wyoming Statute § 22-17-105?

        2.    If so, did Appellants meet the requirements to maintain a ballot contest pursuant to the above statute so that the district court had jurisdiction over the dispute?

## FACTS

[¶5]    Sublette County has historically been governed by a three-member Board of County Commissioners.  In 2011, a group of citizens submitted a valid petition for a

1

ballot proposition to increase the number of commissioners from three to five as permitted by Wyoming Statute § 18-3-501(b) (LexisNexis 2011). The ballot proposition was submitted to the voters at a special election held on August 16, 2011. Voter turnout was 28.67%, and the ballot proposition passed by thirty-one votes.

[¶6] Wyoming Statute § 18-3-501(b)[1] requires that additional commissioner seats created in odd-numbered years be filled at the next general election, meaning that the voters would have chosen the new commissioners in the primary and general elections to be held in August and November of 2012 if other events had not transpired. However, a valid petition to decrease the number of commissioners from five back to three as arguably permitted by Wyoming Statute § 18-3-501(f) was filed on March 1, 2012. Sublette County Clerk Mary Lankford (Lankford) certified the petition and placed the proposition on the ballot in a special election held on May 8, 2012. The percentage of registered voters exercising their franchise was 45.88%, and the proposition passed by 142 votes.

[¶7] Lankford determined that the second ballot proposition eliminated the two additional commission seats created by the first proposition. It would appear that she concluded that the 2012 ballot proposition cancelled the 2011 proposition. She released a proclamation indicating that one county commissioner seat occupied by a sitting commissioner and open without regard to the ballot propositions would be submitted to the voters at the 2012 primary and general elections.

[¶8] After a false start involving the filing of a soon-dismissed petition for review of Lankford's action, Paul Rock, Dari Quirk, and Ernest Kawa filed a complaint for declaratory relief and for a writ of mandamus in the District Court within and for Sublette County on June 18, 2012. We will refer to the plaintiffs below as "Appellants" for the sake of brevity, although they are also Appellees as to Lankford's appeal. All three claimed to be citizens injured by deprivation of their right to vote for three county commission candidates. Rock and Kawa also claimed somewhat enigmatically to have

---

[1] The Wyoming Legislature amended several portions of § 18-3-501 while this action was pending on appeal. *See* 2013 Wyo. Sess. Laws, Ch. 64. Wyoming Statute § 8-1-107, titled "Effect of amendment or repeal on pending actions," provides as follows:

> If a statute is repealed or amended, the repeal or amendment does not affect pending actions, prosecutions or proceedings, civil or criminal. If the repeal or amendment relates to the remedy, it does not affect pending actions, prosecutions or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of action, prosecutions or proceedings existing at the time of the amendment or repeal, unless otherwise expressly provided in the amending or repealing act.

Wyo. Stat. Ann. § 8-1-107 (LexisNexis 2011). The amendments to § 18-3-501 did not expressly provide that they applied to pending actions, and we therefore do not consider their effect on this appeal. *See id.*

2

suffered additional injury because they could not both be elected in 2012, apparently meaning that they were or would have been candidates for the two additional seats authorized by the 2011 ballot proposition.

[¶9]     Appellants asked the district court to declare that three commission seats (the two additional seats authorized by the 2011 vote plus one seat which came up for election from the preexisting three-member commission) had to be filled in the 2012 election. They also asked the district court to declare the May 2012 special election void *ab initio*. They sought a writ of mandamus directing Lankford to issue a proclamation that three seats (one already in existence and two new ones) would be voted upon in the 2012 primary and general elections.  Appellants also sued Secretary of State Max Maxfield in his official capacity, seeking the same relief.  Secretary Maxfield was subsequently dismissed from the case, and that dismissal has not been challenged in these appeals.

[¶10]  Lankford filed a motion to dismiss the complaint, arguing that the only remedy available to the plaintiffs was to have the May 2012 vote set aside in an election contest under Wyoming Statute § 22-17-105, which permits electors to contest a successful ballot proposition.  She contended that the Appellants' complaint was in substance an election contest, and that the district court lacked jurisdiction to hear such a contest because the complaint was not filed within fifteen days of certification of the election results by the canvassing board, and because it was filed by three rather than five electors as required by statute.  She also contended that mandamus was not available in proceedings of this kind.

[¶11]  Appellants' brief in response to the motion to dismiss is not part of the appellate record.   However, as discussed below, they argue here that their action was not an election contest governed by § 22-17-105, but that it was instead an effort to determine the effect of the successful 2011 ballot proposition.  They therefore contend that their action did not have to be brought by five electors rather than three.  They also argue that the applicable statute of limitations or repose is four years rather than fifteen days, because this is an action for injury to their rights "not arising in contract and not herein enumerated" under Wyoming Statute § 1-3-105(a)(iv)(C).

[¶12]  The parties also filed cross-motions for summary judgment.  Appellants claimed that § 18-3-501(b) and (f) governing increase and decrease in commission membership required Lankford to implement the 2011 ballot proposition when the two subsections are read together.  They contended that she was therefore required to issue a proclamation for the election of two additional commissioners in the 2012 primary and general elections, that it was improper to hold the 2012 special election concerning a decrease in the number of commissioners, and that the results of that election were therefore void *ab initio*.

3

[¶13]  Lankford responded that § 18-3-501(f) required her to hold the May 2012 special election upon presentation of a proper petition.  She contended that the successful ballot proposition returned the commission to a three-member body, and that she therefore properly planned to hold an election for the one commission seat which would have been open in that year if neither proposition had been submitted to the voters.

[¶14]  The district court expedited briefing and argument because of the imminent 2012 primary election.  It entered a brief order dismissing Appellants' complaint for declaratory relief on July 25, 2012.  On August 6, 2012, it entered a second order granting Lankford's motion to dismiss as to Appellants' mandamus claim, but denying it as to her claim that the complaint was barred because it was an election contest filed after the passage of fifteen days and not on behalf of five electors.  The court concluded that Lankford "did not meet her burden of establishing that Plaintiffs' Complaint constitutes an election contest pursuant to W.S. §22-17-105 and §22-17-106."

[¶15]  On August 10, 2012, the court entered yet another order explaining and conforming its decision of July 25, 2012.  It found that the decision to implement the 2012 special election  and to proclaim only one seat open for election was proper, explaining succinctly as follows:

> Subsection (f) [of § 18-3-501] addresses the situation where the voters decide to decrease of [sic] the membership of the Board of Commissioners.  The term  "decrease the membership" has been argued by the Plaintiffs to indicate that the legislature intended that no vote to decrease the membership could occur unless those offices have been filled with members.  Until then, they argue, there is no membership to  decrease.  Admittedly,  this logic has some appeal.  But the term "increase the membership" is used in subsections (b) and (c) along with the term "additional offices created".  Obviously the term "increase the membership" is nothing more than a synonym for  "creating additional offices".  Similarly, decreasing the membership as contained in subsection (f) means to decrease the number of offices previously created.  Because the number of offices [sic] were *created*  or membership increased by the vote of the 2011 election, the increased number of offices created by the 2011 election could be decreased by the voters after that.

The court also concluded that the timing of the election was proper under § 18-3-501.

[¶16]  Appellants appealed the foregoing decision in Case No. S-12-0216. Lankford raised the election contest statute as an alternative ground for affirmance in that case, but

also filed a separate appeal challenging the district court's denial of the motion to dismiss on those same grounds in Case No. S-12-0217. The appeals were consolidated for argument and decision.

## STANDARD OF REVIEW

[¶17] Both of these appeals require us to interpret statutes. "Statutory construction is a question of law, so our standard of review is de novo." *Redco Const. v. Profile Props., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415 (Wyo. 2012).

[¶18] Jurisdictional issues are also questions of law which we review de novo. *DeLoge v. Homar*, 2013 WY 33, ¶ 10, 297 P.3d 117, 120 (Wyo. 2013) (citing *Hall v. Park Cnty.*, 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010)). "If the district court lacked subject matter jurisdiction, this Court has jurisdiction on appeal, not on the merits, but only as to the jurisdictional issue." *Hall*, ¶ 3, 238 P.3d at 581 (citing *NMC v. JLW ex rel. NAW*, 2004 WY 56, ¶ 9, 90 P.3d 93, 96 (Wyo. 2004)). *See also Lankford v. City of Laramie*, 2004 WY 143, ¶ 23, 100 P.3d 1238, 1244 (Wyo. 2004) ("[W]e have no better jurisdiction than did the district court.") (citation omitted). If a judgment below "was rendered without jurisdiction, an appellate court must ordinarily reverse and remand for dismissal." *Bruns v. TW Servs., Inc.*, 2001 WY 127, ¶ 18, 36 P.3d 608, 614 (Wyo. 2001) (quoting 5 Am. Jur. 2d *Appellate Review* § 814 at 473 (1995)).

## DISCUSSION

[¶19] In her response to the appeal filed by Rock, Quirk and Kawa as well as in her separate appeal, Lankford challenges the district court's jurisdiction to hear Appellants' complaint under the statutes governing contest of a successful ballot proposition. It is appropriate to summarize the general rules of statutory construction before we examine the governing statutes.

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a

5

statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.

Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.

Whether a statute is ambiguous is a question of law. A statute is unambiguous if reasonable persons are able to agree as to its meaning with consistency and predictability, while a statute is ambiguous if it is vague or uncertain and subject to varying interpretations.

*Redco Const.*, ¶ 26, 271 P.3d at 415–16 (citations omitted) (internal quotation marks omitted).

***Applicable Statutes***

[¶20] Wyoming Statute § 22-17-105 provides that ballot propositions are contestable if certain requirements are met:

A ballot proposition which may by law be submitted to a vote of the people of a county, city or town, district, or other political subdivision may be contested by a petition of five (5) registered electors of the county, city or town, district or other political subdivision filed in the district court of the county not later than fifteen (15) days after the results of the election have been certified by the canvassing board. A ballot proposition contest is a civil action.

Wyo. Stat. Ann. § 22-17-105 (LexisNexis 2011).

[¶21]  Section 22-17-106 lists the grounds for contesting a successful ballot proposition:

> (a) A ballot proposition may be contested for any of the following reasons:
>     (i) Misconduct or material negligence of an election official which affected the result of the election;
>     (ii) The election result was influenced by a bribe;
>     (iii) Illegal votes were counted or legal votes were not counted.

Wyo. Stat. Ann. § 22-17-106 (LexisNexis 2011).

[¶22]  The terms "ballot" and "proposition" are used in the statute providing for an increase or decrease in commission membership.  § 18-3-501(b),(c), and (d).[2]  We therefore reach the unremarkable conclusion that the "proposition" to be placed on the "ballot" under § 18-3-501 is in fact a "ballot proposition" under §§ 22-17-105 and 106.

[¶23]  Lankford argues that the statutes allowing citizens to contest a ballot proposition provide the exclusive means to challenge a proposition approved by the voters, and that § 22-17-106 provides the exclusive grounds for such a contest.  Therefore, she argues, the

---

[2] These provisions provide as follows:

> (b) Notwithstanding subsection (a) of this section, any county may increase the membership of its board of county commissioners from three (3) to five (5) members if a **proposition** for the increase is submitted to a vote of the qualified electors of the county and a majority of those casting their **ballots** vote in favor of the increase. . . .
> (c) The **proposition** to increase the membership of the board of county commissioners shall be at the expense of the county and be submitted to the electors of the county upon receipt by the county clerk of a petition requesting the election signed by at least ten percent (10%) of the qualified electors of the county. . . .
> (d) The **proposition** may be submitted at any general election or at an election date authorized under W.S. 22-21-103.  A notice of election shall be given in at least one (1) newspaper of general circulation published in the county wherein the election is to be held and shall specify the object of the election.  The notice shall be published at least once each week for a thirty (30) day period preceding the election. At the election the **ballots** shall contain the words "for increasing the membership of the board of county commissioners from three (3) to five (5) members", and "against increasing the membership of the board of county commissioners from three (3) to five (5) members".

§ 18-3-501(b), (c), (d) (emphasis added).

district court lacked jurisdiction to hear a challenge to the May 2012 special election because it was filed more than fifteen days after the results of the election were certified, and because the petition was filed by three electors rather than five.

[¶24]  Appellants argue that they do not contest the manner in which Lankford conducted the May 2012 special election, but rather seek a determination of the significance of the August 2011 proposition increasing commission membership.  They do not dispute that the May 2012 election was conducted fairly.  Instead, they contend that the May 2012 election should not have been held under Wyoming Statute § 18-3-501.  They argue that the May 2012 election was void *ab initio*, but if not, that commissioners had to be seated before their membership could be reduced.  They argue that the district court had jurisdiction under the Declaratory Judgments Act, that no particular number of electors is required for claims of this kind, and that the applicable statute of limitations is four years.  The substance of their argument is that § 22-17-106 does not provide exclusive grounds to challenge the 2012 special election.

***Case Law Governing Election Contests***

[¶25]  We do not believe that the election contest statutes are ambiguous, but we do believe they must be read in context.  As this Court observed forty years ago:

> The constitutions and statutes of most jurisdictions provide, as a part of the machinery of elections, a procedure by which election results may be contested.  Such contests are regulated wholly by the constitutional or statutory provisions.  They are not actions at law or suits in equity, and were unknown to the common law.  The proceedings are special and summary in their nature.  A strict observance of the steps necessary to give jurisdiction is required and the jurisdictional facts must appear on the face of the proceedings.  If these steps are not followed, courts are powerless to entertain such proceedings.

*Johnson v. City of Cheyenne*, 504 P.2d 1081, 1082 (Wyo. 1973) (quoting 26 Am. Jur. 2d, *Elections*, § 318).  *Accord Ex parte Vines*, 456 So. 2d 26, 28 (Ala. 1984); *Griffin v. Buzard*, 342 P.2d 201, 202 (Ariz. 1959); *Republican Party of Garland Cnty. v. Johnson*, 193 S.W.3d 248, 252 (Ark. 2004); *Pullen v. Mulligan*, 561 N.E.2d 585, 589 (Ill. 1990); *Bauman v. Maple Valley Cmty. Sch. Dist.*, 649 N.W.2d 9, 13 (Iowa 2002); *Payne v. Blanton*, 229 S.W.2d 438, 440 (Ky. 1950); *State ex rel. Vullo v. Plaquemines Parish Police Jury*, 115 So. 2d 368, 373 (La. 1959); *Mo. ex rel. Bouchard v. Grady*, 86 S.W.3d 121, 123 (Mo. Ct. App. 2002); *Taylor v. Roche*, 248 S.E. 2d 580, 582 (S.C. 1978); *Dick v. Kazen*, 292 S.W.2d 913, 916 (Tex. 1956); 26 Am. Jur. 2d *Elections* § 382 (2004); Joshua A. Douglas, *Procedural Fairness in Election Contests*, 88 Ind. L.J. 1, 3, 34

(2013); 3 Eugene McQuillan, *The Law of Municipal Corporations* § 12:48, at 244–45 (2012); Barry H. Weinberg, *The Resolution of Election Disputes* 1–2 (2006).

[¶26]   As one judge observed, election contests draw courts into political matters:

> The court must be ever mindful in an election contest that it has been delegated responsibility in a basically political matter and is not free to create criteria that may, in its opinion, be more suitable than those the legislature has established.

*Mirlisena v. Fellerhoff*, 463 N.E.2d 115, 118-19 (Ohio Ct. Com. Pl. 1984). *See also Dornan v. Sanchez*, 978 F. Supp. 1315, 1327 (C.D. Cal. 1997) ("An election contest, and allegations of misconduct in its discovery and adjudication, involve political questions which courts should refrain from adjudicating."); *Simpson v. City of Los Angeles*, 253 P.2d 464, 468 (Cal. 1953) ("Courts are reluctant to defeat the fair expression of popular will in elections and will not do so unless required by the plain mandate of the law."); *Gore v. Harris*, 772 So. 2d 1243, 1249 (Fla. 2000) ("[C]ourts are, and should be, reluctant to interject themselves in essentially political controversies . . . ."), *rev'd on other grounds by Bush v. Gore*, 531 U.S. 98, 121 S. Ct. 525, 148 L. Ed. 2d 388 (2000); Steven F. Huefner, *Remedying Election Wrongs*, 44 Harv. J. on Legis. 265, 306 (2007) ("[E]lection contests often put courts in the position of 'kingmaker' without giving them clear, objective standards that might insulate them from charges of political meddling.").

[¶27]   Other courts have been called upon to determine whether a given lawsuit is an election contest or another type of claim.  The Supreme Court of Alaska developed a meaningful distinction in an election contest case:

> The purpose of an election contest is to ascertain whether the alleged impropriety in fact establishes doubt as to the validity of the election result.  For this reason, whether a cause of action should be deemed an election contest turns on the remedy sought.  If the plaintiff's proposed remedy would defeat the public interest in the stability and finality of election results, it is appropriate to deem the cause of action an election contest and to require compliance with the procedures for such contests.  A cause of action is deemed not to be an election challenge only if the remedy will not affect the stability and finality of the election result.

*Braun v. Borough*, 193 P.3d 719, 731–32 (Alaska 2008) (citation omitted) (internal quotation marks omitted). *See also State ex rel. Mackey v. Blackwell*, 834 N.E.2d 346, 349 (Ohio 2005) ("[I]nsofar as appellants sought to change any of the November 2, 2004

election results, '[a]n election contest is the specific remedy provided by statute for the corrections of all errors, frauds and mistakes which may occur in an election.'" (quoting *State ex rel. Byrd v. Summit Cnty. Bd. of Elections*, 417 N.E.2d 1375 (Ohio 1981); *State ex rel. Shriver v. Hayes*, 76 N.E.2d 869 (Ohio 1947))).

[¶28]  Some courts have held that statutory or constitutional grounds contained in provisions for election contests are exclusive, and that no other grounds may be considered because of the unique character of those proceedings.[3] *Mackey*, 834 N.E.2d at 349 (citing *State ex rel. Daoust v. Smith*, 371 N.E.2d 536 (Ohio 1977)); *Braun*, 193 P.3d at 731–32; *Friends of Sierra Madre v. City of Sierra Madre*, 19 P.3d 567, 584–86 (Cal. 2001); *Duncan v. McMurray*, 249 S.W.2d 156, 157 (Ky. 1952); *Hancock v. Lewis*, 122 N.W.2d 592, 594 (Minn. 1963)); *Pierce v. Drobny*, 777 N.W.2d 322, 325 (Neb. 2010); *Barrett v. Monmouth Cnty. Bd. of Elections*, 704 A.2d 1053, 1056 (N.J. Super. Ct. Ch. Div. 1997); *Becker v. Cnty. of Pierce*, 890 P.2d 1055, 1058–59 (Wash. 1995); 3 McQuillin, *supra*, § 12:49, at 254; 26 Am. Jur. 2d, *supra*, at § 389; George L. Blum, Annotation, *Validity, Construction and Application of State Statutory Limitations Periods Governing Election Contests*, 60 A.L.R.6th 481 (2010) ("The applicable statutes governing election contests are generally held to be the exclusive remedy for deciding such contests.").

[¶29]  Other courts have held that although the procedures for election contests are exclusive, the grounds for an election contest may be found in other statutory or constitutional provisions outside a state's election code.  *Kacoonis v. City of Mountain View*, 160 S.E.2d 364, 366 (Ga. 1968) (quoting *Coleman v. Bd. of Ed. of Emanuel Cnty.*, 63 S.E. 41, 44 (Ga. 1908)); *Dorf v. Skolnik*, 371 A.2d 1094, 1099–1100 (Md. 1977); *City of Nameoki v. Granite City*, 95 N.E.2d 920, 921–22 (Ill. 1951); *Gunaji v. Macias*, 31 P.3d 1008, 1015 (N.M. 2001); *State ex rel. Olson v. Bakken*, 329 N.W.2d 575, 580 (N.D. 1983); *Appalachian Elec. Power Co. v. Town of Galax*, 4 S.E.2d 390, 392 (Va. 1939); 26 Am. Jur. 2d, *supra*, at § 389.

[¶30]  We believe that all of these cases are generally consistent with our decision in *Johnson v. City of Cheyenne, supra,* as well as that in *Snell v. Johnson County School District No. 1*, 2004 WY 19, 86 P.3d 248 (Wyo. 2004), at least as they relate to the procedural requirements which must be met to challenge an election.  In *Snell*, plaintiffs challenged the use proposed for bond election proceeds.  The bond election contest

---

[3] This case does not involve a challenge based on the right to vote under the federal or Wyoming constitutions, and we do not address those complex issues here. *See, e.g.*, *Chisom v. Roemer*, 501 U.S. 380, 403 n.31, 111 S. Ct. 2354, 2368 n.31, 115 L. Ed. 2d 348 (1991) ("The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing—one person, one vote." (quoting *Gray v. Sanders*, 372 U.S. 368, 381, 83 S. Ct. 801, 809, 9 L. Ed. 2d 821 (1963))); *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974) ("The right to vote is a fundamental right entitled to the strict protection of the courts.") (citation omitted).

statutes in force at the time required that a contest be filed within fourteen days. The Court noted that it required strict observance of the requirements of the election contest statutes in *Johnson*. However, it held that the strict time limits applicable to such a contest did not apply in cases in which plaintiffs challenged the use of the bond election proceeds rather than the validity or conduct of the election itself. *Id*. at ¶¶ 15–16, 86 P.3d at 255.

[¶31] Statutes creating the right to contest elections generally impose strict, short, and mandatory deadlines for the commencement of election contests. Douglas, *supra*, at 34-36; 3 McQuillan, *supra*, at § 12:51; 26 Am. Jur. 2d, *supra,* at §§ 384, 393. This is for the obvious reason that government business cannot be brought to a standstill pending the outcome of a drawn-out election contest. *Plyman v. Glynn Cnty.*, 578 S.E.2d 124, 126 (Ga. 2003). "[T]he purpose of election contests is to aid the democratic processes upon which our system of government is based by providing a ready remedy whereby compliance with election laws may be assured to facilitate, not hinder by technical requirements, the quick initiation and disposition of such contests." *Tate-Smith v. Cupples*, 134 S.W.3d 535, 538–39 (Ark. 2003).

*Analysis*

   *Character of Action*

[¶32] As noted above, Appellants contend that their lawsuit is not an election contest, but rather an effort to obtain a declaration as to the implementation of the 2011 election contest. We disagree. Appellants seek to have us declare the 2012 election "null and void," and to direct Lankford to hold an election for three commissioners to serve the remaining 2012 to 2016 terms, or in the alternative, to declare that an election must be held in 2014. As already discussed, a lawsuit is an election contest if it seeks a remedy which would "defeat the public interest in the stability and finality of election results." *Braun*, 193 P.3d at 732. *See also Mackey*, 834 N.E.2d at 349.

[¶33] The remedy Appellants seek would clearly affect the result of the 2012 special election and the primary and general elections which followed. Even if Appellants only sought the filling of two seats in 2014, which would at best require this Court to engage in creative interpretation of the applicable statutes, the 2012 special election would have to be determined to be a nullity. However, Appellants ask us to find that Lankford must hold an election for three commission seats in 2014. The voters in the 2012 primary and general elections chose a commissioner whose term might be cut short, meaning that the results of more than one election could be affected by the remedy they seek. This case is readily distinguishable from *Snell*, in which the use of funds resulting from a bond election was challenged–the outcome of that case could not have affected the validity of the underlying bond election.

11

[¶34] The outcome Appellants seek could only result from a declaration that the 2012 special election was void, which is the very essence of an election contest. The remedy to be granted in a successful election contest is statutory:

> A judgment of the court in an election contest shall confirm or annul the election or declare elected a qualified candidate receiving the highest number of legal votes, or declare the result of the election on each contested ballot proposition. The election of a candidate receiving the highest number of legal votes but disqualified for any other legal reason shall be declared null and void and a vacancy will be declared to exist. For offices to be filled by more than one (1) candidate, the election shall not be declared null and void but the qualified candidates receiving the highest number of legal votes shall be declared elected.

Wyo. Stat. Ann. § 22-17-108 (LexisNexis 2011).

[¶35] We believe the term "contest" as used in §§ 22-17-105 and 106 is unambiguous when viewed in context. The legislature is presumed to have chosen that term with full knowledge of its interpretation by other courts:

> All statutes are presumed to be enacted by the legislature with full knowledge of the existing state of law with reference thereto and statutes are therefore to be construed in harmony with the existing law, and as a part of an overall and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to the decisions of the courts.

*In re RB*, 2013 WY 15, ¶ 34, 294 P.3d 24, 33–34 (Wyo. 2013) (quoting *Hall*, ¶ 19, 238 P.3d at 586).

[¶36] Appellants argue that Wyoming's Uniform Declaratory Judgments Act, Wyo. Stat. Ann. §§ 1-37-101 to -115 (LexisNexis 2011), provides the remedy they seek. The Act grants courts of record (in Wyoming's case, the district courts) the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." § 1-37-102. The Act allows district judges to construe various kinds of documents, to declare a fiduciary's rights, and to make determinations of water rights disputes. §§ 1-37-103 to -106. The Act even provides that the enumeration of specific kinds of declarations which can be made is not a limitation on a court's power to render a declaratory judgment relating to other kinds of disputes. § 1-37-107.

12

[¶37]   However, specific statutes control over general ones dealing with the same subject when they are in apparent conflict.  *Gronberg v. Teton Cnty. Housing Authority*, 2011 WY 13, ¶ 45, 247 P.3d 35, 45 (Wyo. 2011); *Hall*, ¶ 12, 238 P.3d at 584; *Horse Creek Conservation Dist. v. State ex rel. Wyo. Att'y General*, 2009 WY 143, ¶ 39, 221 P.3d 306, 318 (Wyo. 2009) (citing *Coffinberry v. Bd. of Cnty. Comm'rs of the Cnty. of Hot Springs*, 2008 WY 110, ¶ 7, 192 P.3d 978, 980 (Wyo. 2008)).  The statute allowing electors to contest a ballot proposition is quite specific.  The legislature granted the courts limited powers in an area traditionally entrusted to the political arena.  We therefore find that the legislature intended to make contest of a ballot proposition an exclusive remedy for challenging a successful ballot proposition, and that it did not intend for the Uniform Declaratory Judgments Act to render those limitations meaningless.

[¶38]   We are further buttressed in this conclusion by the presumption that our legislature acts in a reasonable and thoughtful manner.  *Redco Const.*, ¶ 37, 271 P.3d at 418.  We can conceive of no reason why a reasonable legislature, having created an election contest statute with a fifteen-day period of limitation or repose, would intend at the same time to allow a challenge to the outcome of a ballot proposition any time within four years.  Stable government requires the very prompt resolution of election disputes.  In this case, the 2012 primary and general elections would be affected by a successful challenge to the May 2012 special election decreasing the size of the county commission.  A thoughtful legislature would not intend to maintain a state of instability for four years.

### Time Limitations and Jurisdiction

[¶39]   There is no dispute that this case was filed well over fifteen days after the canvassing board certified the May 2012 special election results.  Lankford points out that the fifteen-day limitation in § 22-17-105 might better be characterized as a statute of repose than a statute of limitation, but the distinction makes little difference.  There is likewise no dispute that this case was not brought by five electors as also required by § 22-17-105.

[¶40]   In *Johnson*, 504 P.2d at 1082, a single citizen challenged a bond election.  We affirmed the district court's ruling that it did not have jurisdiction to decide the contest because the governing statute required that a bond election contest be brought by five electors.  The district court lacked jurisdiction in this case for the same reason, and also because the challenge was untimely under § 22-17-105.

[¶41]   Because we have reached this conclusion regarding jurisdiction, we find it unnecessary to decide whether the grounds for challenging a ballot proposition in § 22-17-106 are exclusive, as some courts have held, or whether additional statutory or constitutional grounds might exist, as other courts have decided.  Those courts finding exclusive grounds note that the political arena provides a sufficient remedy for certain

13

kinds of claimed election errors. They believe that not all remedies need to be judicial in origin. Other courts conclude that the legislature intended to allow courts some flexibility to provide relief from election errors. *Compare, e.g.*, *Repsold v. Indep. Sch. Dist. No. 8*, 285 N.W. 827, 829 (Minn. 1939) ("[C]ourts should be reluctant to interfere with political matters by granting equitable relief [outside the scope of election contest statutes].")*, with Bakken*, 329 N.W.2d at 580 (affirming the trial court's grant of equitable relief in an election contest because "[e]xperience tells us that neither a statute, rule, nor regulation can pragmatically cover every situation that may arise . . . .").

[¶42]   We decide only that Appellants contested the May 2012 ballot proposition, and that they failed to do so within the time specified in and through the five electors required by § 22-17-105. We likewise do not address the merits of the arguments concerning the application of Wyoming Statute § 18-3-501 under these unusual circumstances.

## CONCLUSION

[¶43]   Because we find that the district court lacked jurisdiction to consider Appellants Rock, Quirk and Kawa's challenge to the May 2012 special election, we find its decision to be void and remand for dismissal.